540 A.2d 246

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James Melvin SMITH, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 9, 1987.

Decided March 29, 1988.

Robert M. Lipshutz, Philadelphia, for appellant.

Ronald Eisenberg, Chief, Appeals Div., Gaele McLaughlin Barthold, Deputy Dist. Atty., Robert Myers, Asst. Dist. Atty., Suzan Willcox, Philadelphia, Robert A. Graci, Chief Deputy Atty. Gen., Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

On February 6, 1985, a jury in the Court of Common Pleas of Philadelphia County found appellant, James Melvin (a.k.a. "Mailbox") Smith, guilty of murder of the first degree, criminal conspiracy and possession of an instrument of crime. These charges stemmed from the shooting death of Davis Kelly on North Twenty-first Street in Philadelphia on June 23, 1979. The following day, February 7, 1985, the

same jury sentenced appellant to death in a separate sentencing proceeding conducted pursuant to the Sentencing Code, 42 Pa.C.S.A. § 9711. Post-verdict motions were denied by the Honorable Eugene Gelfand and, on May 6, 1986, Judge Gelfand formally sentenced appellant to death and to consecutive terms of imprisonment of five to ten years and two and one-half to five years, respectively, for the conspiracy and possession of an instrument of crime convictions (the terms of imprisonment to run concurrently to the death sentence). This direct appeal automatically followed. 42 Pa.C.S.A. § 9711(h)(1); 42 Pa.C.S.A. § 722(4); Pa.R.A.P. Rule 702(b).

The evidence adduced at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, discloses the following. On the evening of June 22, 1979, appellant and Levi Rucker met at Kimberleigh Green's residence in the 6400 block of North Twenty-first Street to plan the killing of Davis Kelly. Davis Kelly was suspected by these conspirators of having killed Michael Green, Ms. Green's brother, several months earlier. The plan was for Ms. Green to lure the victim from 6410 North Twenty-first Street, where he was visiting his young daughter, on the pretext of purchasing a quart of beer for Ms. Green. (Ms. Green was not of legal age to purchase alcoholic beverages at this time.) The victim would purchase the beer at the Tropical Lounge which was just down the street. When the victim left the lounge, Levi Rucker was to lock the door of the lounge behind him, and appellant was to emerge from an adjacent alley and shoot the victim with his gun.

The plan, and the victim, were successfully executed later that night, shortly before midnight. Ms. Green gave the victim two dollars to purchase the beer. He walked to the nearby Tropical Lounge and purchased a quart of beer. He then left the lounge and walked back toward 6410 North Twenty-first Street where Ms. Green waited outside. As the victim approached Ms. Green, appellant emerged from the adjacent alley and shot the victim from behind. The victim fell to the ground and, as he attempted to get to his

feet, appellant came closer to him and, from about three feet away, pumped three more rounds into him. The three conspirators then fled.

Davis Kelly died shortly thereafter as a result of his wounds which severely damaged most of his internal organs. He had been shot four times, one of the bullets exiting his body (the spent bullet was never recovered) and the other three lodging in and recovered from his body. One of the bullets had been severely distorted by an impact with a hard object which, the Commonwealth's firearms expert testified, demonstrated that the bullet had richocheted, probably off of the sidewalk. The forensic medical evidence corroborated that one of the victim's wounds was caused by a richochet. The remaining two bullets were identified as .32 caliber ammunition.

Betty Harris was present at her mother's house at 6410 North Twenty-first Street when Kimberleigh Green asked the victim to purchase some beer on the night of the shooting. Betty Harris and two friends were on the porch when he returned, and she witnessed the shooting which took place on the sidewalk in front of the house. Ms. Harris had known appellant from the neighborhood for "about ten years." However, because she was fearful of appellant, she did not identify appellant as the shooter until January, 1985 on the eve of trial. Prior to that time, she had consistently told police investigators that she was unable to identify the shooter.

On June 25, 1979, two days after the murder of Davis Kelly, Philadelphia Police Officer Ann O'Donnell responded to a police radio broadcast of a man with a shotgun who was observed outside a bar in North Philadelphia. When she arrived at the scene, she saw a large number of men outside the bar, one of whom had an object which appeared to be a handgun visibly sticking out of his waistband. That man was appellant. Officer O'Donnell patted appellant down, and confiscated from him a .32 caliber "Llama" semi-automatic pistol and a bag containing approximately 25 rounds of .32 caliber ammunition. Appellant was arrest-

ed and subsequently charged with receiving stolen property (the gun had been reported stolen), carrying firearms without a license,[1] and carrying firearms on public streets or public property in Philadelphia.[2] He was subsequently acquitted of those charges. Ballistics examinations and analysis established that the lethal bullets which killed Davis Kelly were fired from the .32 caliber pistol in appellant's possession on June 25, 1979.

Appellant was questioned about the homicide following his June 25th arrest, and he rendered an exculpatory statement. Appellant was then released from custody, as the police investigators did not believe there was sufficient evidence to hold him for murder at that time.

In October, 1982, Kimberleigh Green, in custody on automobile theft charges, admitted her involvement in the murder of Davis Kelly to police, and implicated Levi Rucker and appellant. She was arrested and charged with murder, and on April 28, 1983, she pled guilty to conspiracy and murder of the third degree, and agreed to testify against Rucker and appellant. The two men were then arrested: appellant on May 3, 1983 and Rucker on May 24, 1983.

The two were to be tried together and a joint trial was scheduled before the Honorable Lisa A. Richette. Numerous pretrial motions, including motions to dismiss and to suppress, were presented to and argued before Judge Richette on November 28–29, 1983, most of which were denied. After a jury was selected, but before testimony was taken, Levi Rucker, who had given an inculpatory statement to police implicating himself and appellant, decided to plead guilty to conspiracy and murder of the third degree, and he agreed to testify against appellant. After co-defendant Rucker pled guilty, Judge Richette recused herself from appellant's trial, declared a mistrial, and the case was assigned to Judge Gelfand.

1. 18 Pa.C.S.A. § 6106, Firearms not to be carried without a license.
2. 18 Pa.C.S.A. § 6108, Carrying firearms on public streets or public property in Philadelphia.

Additional pretrial motions were heard and denied, and voir dire of prospective jurors commenced on January 17, 1985. At trial, the Commonwealth presented, inter alia, the testimony of appellant's co-defendants, Green and Rucker, and of eyewitness Betty Harris, in addition to ballistics, forensic and police investigatory evidence. The defense consisted of attempts to discredit and impeach the testimony of the eyewitnesses and to show the co-defendants to be the sole perpetrators of the conspiracy and murder. Defense witnesses included appellant's sister, Barbara Smith, who testified that appellant was not at Kimberleigh Green's house on the night of the shooting, and one Darnell Holland, who testified that he was at the Tropical Lounge and witnessed the shooting and that appellant was not there and did not participate. Additionally, appellant took the stand and denied shooting Davis Kelly. Appellant explained that he purchased the .32 caliber pistol and ammunition from "two guys" at the bar in North Philadelphia for $55.00 the night of his arrest on June 25, 1979. He did not know who the "two guys" were.

On February 6, 1985, the jury returned a verdict of guilty on all counts, murder of the first degree, criminal conspiracy and possession of an instrument of a crime. The following day, additional evidence and argument were presented at the separate sentencing proceeding. After the jury was charged and deliberated, it returned a sentence of death on the murder conviction. The jury found that the Commonwealth had proven the existence of two aggravating circumstances, namely that in the commission of the offense, the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense, 42 Pa.C.S.A. § 9711(d)(7), and significant history of felony convictions involving the use of violence, 42 Pa.C.S.A. § 9711(d)(9), and it found no mitigating circumstances. Accordingly, the sentence of death was mandated by statute. 42 Pa.C.S.A. § 9711(c)(1)(iv) ("the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance ... and no mitigating circumstance....").

24

Our standard of review in cases of murder of the first degree in which a verdict of death has been rendered is established by the Sentencing Code, 42 Pa.C.S.A. § 9711(h), which provides:

(2) In addition to its authority to correct errors at trial, the Supreme Court shall either affirm the sentence of death or vacate the sentence of death and remand for the imposition of a life imprisonment sentence.

(3) The Supreme Court shall affirm the sentence of death unless it determines that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of an aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

Applying that standard, we now affirm appellant's convictions, his sentence of death and his sentences on the non-homicide convictions.

Initially, we hold that the evidence was clearly sufficient, beyond a reasonable doubt, to sustain the jury's determination that appellant was guilty of murder of the first degree, criminal conspiracy and possession of an instrument of crime.[3]

Appellant has raised, in a scattergun approach, some thirty-seven allegations of pretrial, trial, sentencing hearing and post-trial proceedings errors which, he asserts, require that we dismiss the convictions and criminal charges

3. Respectively, 18 Pa.C.S.A. §§ 2502, 903 and 907. Although not specifically raised in this appeal, this Court will, as in all appeals from a judgment of sentence of death, review the record to determine whether the evidence is sufficient to sustain the conviction for murder of the first degree. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26 n. 3, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983).

against him, reverse his convictions and award him a new trial, or vacate his sentence of death. We will address his numerous assignments of error seriatim (in the order chosen by this Court for convenience of discussion).

*Allegations of Pretrial Errors*

Appellant first argues that the lower court erred in failing to grant his motion to dismiss the charges against him because his previous acquittal on charges of possessing the murder weapon on June 25, 1979 should have, by application of principles of collateral estoppel, precluded the Commonwealth under the circumstances from prosecuting him for the shooting death of Davis Kelly. Relying on this Court's plurality decision in *Commonwealth v. Hude*, 492 Pa. 600, 425 A.2d 313 (1980) and on 18 Pa.C.S.A. § 110, "When prosecution barred by former prosecution for different offense," appellant asserts that the issue of whether he possessed the firearm on June 25, 1979, which was the murder weapon, was also an essential issue in the subsequent prosecution for murder, conspiracy and possession of an instrument of crime, and hence his previous acquittal on the possession charges requires his discharge.

While *Hude* was a plurality opinion (per Nix, J.), its analysis of collateral estoppel principles in criminal prosecutions has since been accepted by a majority of the members of this Court. *See, e.g., Commonwealth v. Brown* 503 Pa. 514, 517–19, 469 A.2d 1371 (1983) *and Commonwealth v. Lagana*, 510 Pa. 477, 480–81, 509 A.2d 863 (1986). *Hude* interpreted 18 Pa.C.S.A. § 110 in light of federal constitutional double jeopardy protections which were held to encompass principles of collateral estoppel as set forth by the United States Supreme Court in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Collateral estoppel is "issue preclusion" which does not automatically bar subsequent prosecution but does bar redetermination in a second prosecution of those issues *necessarily* determined between the parties in a first proceeding which has become a final judgment. *Commonwealth v. Hude, supra*, 492 Pa. at 612, 617, 425 A.2d at 319, 322. It is a principle to be

applied with "realism and rationality", not "with the hyper-technical and archaic approach of a 19th century pleading book." *Ashe v. Swenson, supra* 397 U.S. at 444, 90 S.Ct. at 1194.

We stated in *Hude:*

The approach set forth by the *Ashe* Court in determining the applicability of the principle of collateral estoppel where a previous judgment of acquittal was based upon a general verdict, is that we must:

... examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. *Id.* at 444, 90 S.Ct. at 1194.

In determining "whether a rational jury could have grounded its verdict upon an issue other than that which" is sought to be foreclosed we are cautioned that "the inquiry 'must be set in a practical frame and viewed with any eye to all the circumstances.' " *Id.* at 444, 90 S.Ct. at 1194.

492 Pa. at 612, 425 A.2d at 319–20. In making this determination, we are guided by the federal decisions which employ a three-step approach in applying *Ashe:*

(1) An identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) an examination of the record of the prior case to decide whether the issue was 'litigated' in the first case; and (3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

492 Pa. at 613, 425 A.2d at 320 (federal court citations omitted).

Finally, in *Hude,* we interpreted 18 Pa.C.S.A. § 110 in a manner consistent with *Ashe* and the above principles, stating:

Section 110(2) states in pertinent part:

§ 110. When prosecution barred by former prosecution for different offense.

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

\* \* \* \* \* \*

(2) The former prosecution was terminated, after the indictment was found, by an acquittal ... which acquittal ... necessarily required a determination inconsistent with a fact which must be established for conviction of the second offense.

We therefore hold that *"necessarily required a determination"* is no more restrictive than "whether a *rational* jury could have grounded its verdict" without inclusion of the issue defendant seeks to exclude from relitigation. 492 Pa. at 613, 425 A.2d at 320–21.

■ In the instant case, we do not have a full record of the proceedings in the first prosecution, as the notes of testimony were not transcribed. Nevertheless, it is clear from the record before us and from the foregoing principles that appellant's previous acquittal on charges arising from his arrest on June 25, 1979 did not preclude his subsequent prosecution for murder and related charges. In the first prosecution, appellant was charged under two sections of the Pennsylvania Uniform Firearms Act, namely sections 6106 and 6108, 18 Pa.C.S.A. §§ 6106, 6108. Section 6106 provides, in relevant part:

**Firearms not to be carried without a license**

**(a) Offense defined.**—No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefore except as provided in this subchapter.

Section 6106(b) then lists numerous exceptions to application of the licensure requirement, including "(8) Any person while carrying a firearm unloaded and in a secure wrapper

from the place of purchase to his home or place of business...."

Section 6108 provides:

**Carrying firearms on public streets or public property in Philadelphia**

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1) such person is licensed to carry a firearm; or

(2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

Possession of the instrument is a necessary element of both section 6106 and section 6108, but a defendant can be in physical possession of a firearm and not violate these provisions. For prosecutions under section 6106, the Commonwealth must affirmatively demonstrate that the defendant carried the firearm in a vehicle or concealed on his person, and that he did not have a license for the firearm. *Commonwealth v. McNeil,* 461 Pa. 709, 337 A.2d 840 (1975). In prosecutions under section 6108, the Commonwealth must show that the defendant possessed the firearm on public streets or public property in Philadelphia; however the Commonwealth need not affirmatively demonstrate that the defendant was without a license. *Commonwealth v. Bigelow,* 484 Pa. 476, 399 A.2d 392 (1979). The defendant may demonstrate under section 6108 that he had a license, as a defense, or that he did not need a license because he was exempt under section 6106(b).

In the instant, subsequent prosecution, appellant was charged with possessing an instrument of crime-generally, namely a handgun, *on June 23, 1979,* under the Inchoate Crime chapter of our Crimes Code, 18 Pa.C.S.A. § 907. Section 907 provides in relevant portion:

**Possessing instruments of crime**

(a) **Criminal instruments generally.**—A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

**(b) Possession of weapon.**—A person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally.

As he was charged with possession of an instrument of crime-generally, the Commonwealth was required in the instant case to demonstrate only that on June 23, 1979, appellant possessed an instrument of crime, as defined in subsection (c),[4] and that he had the intent to employ it criminally.

It is apparent that appellant's acquittal on charges of possessing a firearm on June 25, 1979 in violation of sections 6106 and 6108 of the Uniform Firearms Act did not necessarily litigate or decide an issue dispositive of, or sufficiently similar to, the issues involved in the instant prosecution to preclude the Commonwealth from prosecuting appellant. Appellant's acquittal of violating section 6106 might well have been based upon the Commonwealth's failure to demonstrate that he had no license for the firearm or to convince the fact-finder that he had it *concealed* on his person (it was readily visible to the arresting officer). The acquittal might also have resulted from his presentation of the defense that he was exempt under one of the numerous exceptions of section 6106(b), say for example subsection 8 regarding transporting a firearm unloaded from the place of purchase. Appellant gave an exculpatory statement following his June 25, 1979 arrest which was

**4.** Section 907 further provides:

(c) **Definitions.**—As used in this section the following words and phrases shall have the meanings given to them in this subsection: **"Instrument of crime."**

(1) Anything specially made or specially adapted for criminal use; or

(2) Anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

**"Weapon."** Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable, and components which can readily be assembled into a weapon.

consistent with his trial testimony (in the instant prosecution) that he had just purchased the gun in the bar at which he was arrested. *See* Notes of Testimony (N.T.) November 29, 1983 at 252, Pretrial Suppression Hearing before Judge Richette, *and* N.T. January 1, 1985, Trial at 99–102; Brief for Commonwealth at 18. Appellant's acquittal of violating section 6108 may well have been based upon the Commonwealth's failure to prove he carried the handgun on public property or streets (the record does not disclose whether the June 25th arrest took place on a public sidewalk or on private property adjacent to the bar), or upon appellant's establishing a defense under § 6108(1) or (2). Appellant's acquittal on these possession charges did not, therefore necessarily prove that he did not actually possess the handgun on June 25, 1979, nor did it dispose of the issues to be litigated in the subsequent prosecution for the inchoate crime of possession under 18 Pa.C.S.A. § 907, wherein the Commonwealth was required to show that appellant was in possession of an instrument of crime *on June 23, 1979* and that he intended to employ it criminally. Appellant, despite the former acquittal, could well have possessed the handgun on both June 23rd, and June 25th, and the Commonwealth's failure to establish that he violated sections 6106 and 6108 of the Uniform Firearms Act did not preclude the Commonwealth from proving that, on June 23rd, he possessed an instrument of crime (a handgun) and employed it criminally (to kill Davis Kelly). Collateral estoppel did not therefore prevent the subsequent prosecution of appellant under section 907, nor his prosecution for murder and criminal conspiracy, as the acquittal did not "necessarily require a determination inconsistent with a fact which must be established for conviction of the second offense." 18 Pa.C.S.A. § 110(2).[5]

5. As with most of appellant's assertions, he offers very little in the way of specific averments; i.e., he fails to specify the factual issues that were determined at the previous prosecution for possession and he fails to explain with any specificity how the issues decided at that prosecution "necessarily determined" (and therefore precluded relitigation of) any issues at his subsequent prosecution for murder, conspiracy and possession. Instead, he merely makes the general

Appellant next raises a closely related collateral estoppel argument, stating that the pretrial motion court "erred in denying petitioner's motion to exclude any mention of the firearm allegedly obtained from the petitioner at trial because of the not guilty ruling on the trial for possession of the allegedly fatal firearm in C.P. 79–07–0413." He makes no new argument, simply stating that "the discussion of collateral estoppel from point number one is incorporated herein." This contention is without merit, for the reasons stated in our foregoing discussion. Appellant's acquittal of the charges for possession under the Uniform Firearms Act did not necessarily determine that appellant was not in actual physical possession of the gun on June 25, 1979. Moreover, the suppression court at C.P. 79–07–0413, the first prosecution, denied appellant's motion to suppress the gun and bullets on October 31, 1979.[6] In the instant, subsequent prosecution, Judge Richette reheard the suppression motion, considered the court's prior ruling (of non-suppression) in the previous case, and properly denied appellant's motion to suppress, finding that the evidence was legally obtained. We find no error in the court's refusal to suppress the gun and to prohibit testimony about the gun merely because appellant had been previously acquitted of charges under the Uniform Firearms Act.

■ Appellant argues that the court erred in denying his pretrial request to order "Barbara Harris" to identify appellant from a police lineup, and in failing to suppress the identification of appellant by "Barbara Harris." Appel-

assertion that "In both cases, possession of the firearm is essential," and "it is clear that there was a decision [in the prior prosecution] on the issue of possession." Brief for Appellant at 12–13.

6. Counsel blatantly misrepresents the record on this point, stating "since the evidence had been suppressed at the suppression hearing in C.P. 70 [sic]–07–0413, no mention of it at trial is allowed." Brief for appellant at 13. This is flatly contradicted by the record, and by counsel's statement to Judge Richette that "I concede, based upon my review of the Quarter Sessions file, that a motion to suppress the firearm was litigated before Judge Cain and denied." N.T., Pretrial Hearing before Judge Richette, November 28, 1983 at 50. We are disturbed by this misrepresentation by counsel and by other aspects of appellant's brief, as will be discussed more fully in text, *infra.*

lant's "Points" 3 and 6. These arguments are specious. His argument that he was entitled to have the eyewitness, Betty Harris,[7] participate in a lineup is based on *Commonwealth v. Sexton*, 485 Pa. 17, 400 A.2d 1289 (1979), wherein this Court held that under *some* circumstances it could be an abuse of discretion to deny such a request. In *Sexton:*

The sole evidence connecting appellee to this crime was the identification of Mr. Weinstein, [the eyewitness] who had no knowledge of appellee before the incident, observed the culprit briefly before and during the crime, had no contact with the appellee between the arrest and the certification hearing, and had not been presented with an opportunity of a photographic identification prior to the hearing confrontation.

*Id.*, 485 Pa. at 23, 400 A.2d at 1292.

The circumstances in the present case bear little resemblance to those in *Sexton*. Betty Harris had known appellant from the neighborhood for some ten years preceding the murder in June, 1979, and had seen him since the shooting. She had the opportunity to observe appellant at close range, and she did, in fact, identify appellant from a photographic array. The court did not abuse its discretion, therefore, in refusing to order a pretrial identification lineup.

■ Appellant's contention that Ms. Harris' identification of him should have been suppressed is based upon her previous "inability to identify the shooter" to the police on numerous occasions between the shooting on June 23, 1979 and January 1, 1985 (when she finally went to the police and informed them that appellant was the shooter). Appellant asserts this renders Ms. Harris' identification of him inherently suspect and unreliable. The suppression court properly refused to suppress Ms. Harris' identification, finding that the witness had adequate opportunity to observe the

7. While Barbara Smith and Betty Harris were witnesses in this case, appellant refers here to eyewitness "Barbara Harris." It is obvious from the context that appellant's argument is in reference to Betty Harris.

incident and appellant and that she did in fact recognize him. N.T. Pretrial Suppression Hearing before Judge Gelfand, January 1, 1985 at 61–62. The witness's prior failure to identify appellant did not require suppression of her identification, but instead went only to the weight and credibility of her testimony. *Commonwealth v. Silver*, 499 Pa. 228, 237, 452 A.2d 1328 (1982) ("Mrs. Collier's credibility, given her inability to identify appellant before trial, goes to the weight to be accorded her testimony rather than its admissibility .... The witness's earlier failures were brought out fully by defense counsel on cross-examination, and the trial court properly instructed the jury to receive her identification testimony with caution.") The court properly admitted Ms. Harris' identification testimony.

Appellant also asserts that the court "erred in failing to grant petitioner's request for the criminal records of all civilian witnesses who were to testify at trial." "Point" 4. The record does not support this assertion. The court reviewed the criminal records of the various prosecution witnesses *in camera* and disclosed to counsel all of their convictions involving *crimen falsi*. The record shows that counsel did in fact make use of the criminal records of Kimberleigh Green and Levi Rucker in an attempt to discredit their testimony. Appellant does not now inform us whether there were any additional criminal records involving *crimen falsi* that would have been helpful in his impeachment of these or other prosecution witnesses, and in the absence of any factual averments that he was actually deprived of specific information that might have benefited appellant at trial, we find no merit to this claim. We are also unpersuaded by his bare assertion that "the *in camera* proceeding mandated by the pre-trial motion judge ... barred [counsel] from being able to preserve proper objections to the trial court's ruling." Appellant offers no citation of authority nor does he elaborate as to how the *in camera* review was inadequate and prevented him from preserving any objections. In fact, the record indicates that counsel acquiesced to the court's *in camera* review of the witnesses' criminal records for *crimen falsi*. N.T. Novem-

ber 28, 1983, Pretrial Hearing before Judge Richette, at 40–44.

Appellant next asserts that the suppression court erred in failing to suppress "physical evidence and statements." Presumably, while he does not identify the challenged evidence and statements, he refers to the handgun, bullets and exculpatory statement obtained as a result of the June 25, 1979 arrest. His arguments are that the arresting officer had no reasonable basis to search him and seize the handgun on June 25, 1979, and that the appellant's "obviously low I.Q. clearly shows his inability to understand *Miranda* warnings." Brief for appellant at 15, "Point" 5. Again, appellant gives no citations of authority to support either contention. The suppression court correctly ruled that the physical evidence was properly seized because the arresting officers pat-down of appellant was justified as a stop and frisk for the officer's safety under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See also Commonwealth v. Cortez,* 507 Pa. 529, 491 A.2d 111 (1985). Appellant did not raise the issue of his low I.Q. at the suppression hearing, and it has been waived. N.T. Pretrial Hearing before Judge Richette November 29, 1983, at 247–53. *Commonwealth v. Blair,* 460 Pa. 31, 36 n. 3, 331 A.2d 213 (1975). Furthermore, there could be no prejudice because, as counsel conceded, the statement was exculpatory. N.T., *id.* at 252.

Appellant raises several issues regarding the pretrial procedures in capital cases. ("Points" 7–9) He first argues that the court erred in denying his request for a pretrial hearing regarding the existence of aggravating circumstances. The absence of such a pretrial hearing is objectionable to appellant because the prosecutor can obtain an additional allotment of peremptory challenges (thirteen additional: *see* Pa.R.Crim.P.Rule 1126) upon the "mere assertion" that aggravating circumstances exist. Appellant fails to indicate how he was or could be prejudiced by such circumstances, he cites no authority, and he in fact concedes that the current procedure (i.e., no pretrial hearing) is

required by the "present state of law." This argument is frivolous.

Appellant's second and third arguments regarding pre-trial procedures in capital cases involve the procedures on voir dire for death-qualifying a jury: he argues that death-qualifying a jury violates "the Eighth and Fourteenth Amendments to the U.S. Constitution and the applicable provisions of the Pennsylvania Constitution;" that the death penalty is unconstitutional under the due process, equal protection and cruel and unusual punishment clauses of the state and federal constitutions; and that certain prospective jurors were improperly excused for cause.[8] However, appellant's argument on these issues concedes that "the present state of law is such that the death penalty is not seen as being *per se* cruel and unusual punishment, nor is it seen as a violation of the due process and equal protection provisions of the Federal and State Constitutions." Brief for appellant at 17–18. Indeed, appellant is correct on this score. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). He argues, however, that "A civilized and free society should not kill pathetic creatures such as defendant [because of his low I.Q.]—for its sake, not his. It is hoped that the law will evolve to this point soon." Brief for appellant at 17. The law has not "evolved" to this point. Our legislature has painstakingly enacted a comprehensive sentencing scheme for imposing the death penalty when certain aggravating circumstances accompany the killing. This decision was reasoned and reasonable, and was within the legislature's prerogative to make.

---

**8.** Appellant does not argue that the practice of "death qualifying" a jury is unconstitutional on the grounds that it produces a prosecution prone jury, *see Commonwealth v. Morales*, 508 Pa. 51, 65–66, 494 A.2d 367 (1985), nor does he argue that the named veniremen were improperly excluded in violation of the standards approved by the United States Supreme Court for so "death qualifying" the jury. *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

36

■ Appellant claims that the court erred in denying his challenges for cause to six particular prospective jurors, which challenges were based on the jurors' answers to various questions posed by the attorneys on voir dire. "Points" 10–12, 14–16. These claims are without merit. It is true, of course, that an accused has the right to challenge a prospective juror for lack of impartiality. We do not expect jurors to be free from all prejudices, however; rather, the law requires them to be able to put aside their prejudices and determine guilt or innocence on the facts presented. *Commonwealth v. Johnson*, 452 Pa. 130, 305 A.2d 5 (1973); *Commonwealth v. Sweeney*, 464 Pa. 425, 430, 347 A.2d 286 (1975). The purpose of the voir dire examination is not to provide a better basis upon which a defendant can exercise his peremptory challenges, but to determine whether any venireman has formed a fixed opinion as to the accused's guilt or innocence. *Commonwealth v. Sweeney, supra; Commonwealth v. Hoss*, 469 Pa. 195, 364 A.2d 1335, 1336 (1976). The burden of proving that a venireman should be excused for cause is on the challenger who must demonstrate that he or she possesses a fixed, unalterable opinion that would prevent him or her from rendering a verdict based solely on the evidence and the law. *Commonwealth v. Martin*, 465 Pa. 134, 348 A.2d 391 (1975); *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Even a statement by a prospective (or chosen) juror that some evidence might be required from defendant to change an opinion or impression already formed would not be a sufficient basis for challenge for cause if he or she also stated that he or she could follow the court's instructions and decide the case solely on the evidence presented. *Commonwealth v. Sparrow*, 471 Pa. 490, 500–01, 370 A.2d 712 (1977); *Commonwealth v. Lopinson*, 427 Pa. 284, 234 A.2d 552 (1967); *Commonwealth v. McGrew*, 375 Pa. 518, 100 A.2d 467 (1953).

■ In applying these standards and principles, great deference must be given the trial judge who not only hears

the questions and answers during voir dire, but also ob-
serves the demeanor of the veniremen and assesses their
credibility and ability to be impartial. *Commonwealth v.
Bachert,* 499 Pa. 398, 408–09, 453 A.2d 931 (1982), *cert.
denied* 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983);
*Patton v. Yount,* 467 U.S. 1025, 1037–38, 104 S.Ct. 2885,
2891–92, 81 L.Ed.2d 847 (1984); *Wainwright v. Witt, supra*
469 U.S. at 424–26, 105 S.Ct. at 852–53. As the United
States Supreme Court stated in *Wainwright,* a finding
regarding a venireman's impartiality "is based upon deter-
minations of demeanor and credibility that are peculiarly
within a trial judge's province.... The trial judge is of
course applying some kind of legal standard to what he sees
and hears, but his predominant function in determining
juror bias involves credibility findings whose basis cannot
be easily discerned from an appellate record." *Id.* at 105
S.Ct. 854–55. This Court just recently reiterated the long-
standing standards of appellate review of a trial judge's
rulings during voir dire examination, which standards rec-
ognize the deference to be given the trial judge; in *Com-
monwealth v. Albrecht,* 510 Pa. 603, 617, 511 A.2d 764, 771
(1986), we stated:

> The Court in *Commonwealth v. McGrew,* 375 Pa. 518,
> 525, 100 A.2d 467, 470 (1953), stated: "The examination
> of jurors under voir dire is solely for the purpose of
> securing a competent, fair, impartial and unprejudiced
> jury." We also there observed that "the scope of a voir
> dire examination rests in the sound discretion of the trial
> Judge and *his decisions, even in a challenge for cause,
> will not be reversed in the absence of palpable error."*

(emphasis added). *See also Irvin v. Dowd, supra* ("mani-
fest error"); *Commonwealth v. Bachert, supra* ("abuse of
discretion").

Applying these standards in the instant case, and
reviewing the *entire* voir dire examination of the challenged
veniremen, including that conducted by the trial judge in
addition to questioning by defense counsel, we find no error
in refusing to excuse the veniremen for cause. While each

venireman gave answers which, to varying degrees, initially indicated that people charged with crimes are usually guilty of something and that some evidence might be required to change their (the veniremen's) impressions in this regard, or that policemen are more believable than other witnesses, each also responded positively to the judge's questioning about the burden of proof being on the Commonwealth, about the presumption of innocence including that defendants have no obligation to testify or present evidence, and about their (the veniremen's) ability to render an impartial verdict on the evidence alone. The trial judge was in the best position to assess the prospective jurors' potential bias and partiality, and determined that they would be impartial. Moreover, appellant did not exhaust his peremptory challenges, so there can be no prejudice. *Commonwealth v. Morales*, 508 Pa. 51, 63–64, 494 A.2d 367 (1985). Accordingly we see no reason to disturb the trial judge's rulings on voir dire and find no error in his refusing to grant these challenges for cause.

Appellant also claims the court erred in denying his motion for mistrial when one of the veniremen actually chosen as a juror was excused for cause due to hardship after her selection but before any testimony was taken. "Point" 13. This issue is frivolous, as counsel agreed during voir dire that this selected juror should be excused, and stated "I will accept her being excused." N.T., Voir Dire, January 17, 1985 at 4. Moreover, appellant does not provide a clue as to how he was prejudiced by this juror's being excused, and we discern none.

*Asserted Trial Errors*

Appellant's first assertions of error at trial concern alleged hearsay statements of Kimberleigh Green, who "was allowed to testify about statements Barbara Smith [appellant's sister] made to her," and who was allowed to "conclude ... that petitioner allegedly referred to the deceased in a conversation before the deceased's death." "Points" 17–18. Appellant maintains that these statements were not admissible under the co-conspirator's declarations

exception to the hearsay rule. The record discloses that all but one of appellant's hearsay objections to Ms. Green's testimony was sustained, and no further relief was requested. The record does not support appellant's assertion, therefore, that Ms. Green was permitted to give hearsay evidence gathered from Barbara Smith. As to the petitioner's alleged reference to the deceased, the sole hearsay objection which was overruled, N.T. Trial, January 28, 1985 at 14–15, Barbara Smith's testimony was that "Mailbox" (appellant) had asked Ms. Green if she had seen Davis Kelly on the evening of June 23, 1979. Appellant is correct that this hearsay statement was not admissible as a "co-conspirator's declaration." It was, however, admissible as a declaration *of the appellant himself,* an admission of a party. *Commonwealth v. Cooley,* 484 Pa. 14, 21, 398 A.2d 637, 641 (1979). Moreover, extrajudicial statements of a defendant may be used against him even though they contain no admission of guilt. *Commonwealth v. Tervalon,* 463 Pa. 581, 345 A.2d 671 (1975). There was no error, therefore, in allowing Ms. Green to testify as to appellant's out-of-court statement.

Appellant's nineteenth assertion of error is that the "trial court erred in allowing co-defendant Levi Rucker to bolster his testimony with prior consistent statements before cross-examination." "Point" 19, Brief for appellant at 21. Levi Rucker testified on direct examination, over objection, that when he was arrested in May, 1983, he told the police at that time that appellant shot Davis Kelly. N.T. Trial, January 29, 1985 at 33, 37. Appellant concedes that prior consistent statements of a witness are admissible to rebut a defense suggestion of corrupt motives or recent fabrication. *Commonwealth v. Griffin,* 511 Pa. 553, 568–69, 515 A.2d 865 (1986). However, he takes issue with admitting such statements where "no challenge to Rucker's testimony had yet been made." The order of proof is a matter within the sound discretion of the trial court the exercise of which will be upheld on appeal absent an abuse thereof. *Commonwealth v. Smallwood,* 497 Pa. 476, 484,

442 A.2d 222 (1982). The court did not abuse its discretion in this case in admitting prior consistent statements of a witness before that witness was actually impeached on cross-examination, because appellant's entire line of defense centered around impeaching the credibility of the co-defendants and attempting to portray them as the sole perpetrators of the shooting and conspiracy. Kimberleigh Green's testimony had already been attacked on the basis of her corrupt motives for fabricating evidence against appellant in return for pleading guilty to a lesser offense. Defense counsel's opening argument suggested that Levi Rucker had motives to fabricate evidence against appellant in order to obtain a lenient sentence. That the prosecution was allowed to introduce prior consistent statements to rebut a charge of corrupt motives in anticipation of the announced defense, rather than following cross-examination of this particular witness, was a matter well within the discretion of the trial court.

Appellant next claims that it was error to deny his motion for mistrial when "Betty Harris stated petitioner was in jail when she changed her statement, clearly implying petitioner was in jail on an unrelated offense. (1/29/85, N.T. 142)." This is a frivolous issue. Ms. Harris did not tell police that appellant was the shooter she saw on June 23, 1979 until the eve of trial, in January, 1985. She was asked at trial why she chose to tell the police at that time, and she responded "At the time I was scared, I didn't want to get involved and after I knew he [appellant] was in jail I felt safer." In no way does this response suggest that appellant had been in jail on an *unrelated* offense; to the contrary, the only reasonable inference is that appellant was in jail awaiting this trial which was already scheduled to commence in a matter of days.

Appellant next claims it was error to deny him his request for mistrial when one of the investigating detectives testified "that there was evidence against petitioner which was not introduced into court." "Point" 21, Brief for Appellant at 22. When asked how he became involved in

the investigation, Detective Lubiejewski stated: "Well, preliminarily we got involved approximately May–June of 1980 through the use of informants." Appellant states that this question demonstrates a manifest necessity for a mistrial. We fail to see how this vague reference to "informants" implied the existence of any evidence against appellant at all, especially since he was not arrested for another three years; much less do we see how appellant suffered any harm by the detective's remark. A mistrial was unwarranted.

"Point" twenty-two states that it was error to deny a mistrial when the prosecuting attorney "told the jury there had been a prior trial in the matter, thereby inferring a prior conviction. (1/30/85, N.T. 97–98)." Brief for appellant at 22. This assertion would appear to be another attempt to mislead this Court (*see* note 6, *supra*) by referring to a remark twisted far out of context. Reading the "offending" passage makes it clear beyond all doubt that the reference to *a* prior trial came while the prosecutor was questioning defense witness, attorney Vincent Lorusso who represented Levi Rucker, about approaching the Commonwealth's attorney during Levi Rucker's trial.

Appellant next argues that the Commonwealth's attorney improperly failed to comply with his discovery requests pursuant to Pa.R.Crim.P. Rule 305 which "which requires him to turn over all existing statements of eyewitnesses. (1/31/85, N.T. 62)." "Point" 23. While appellant, once again, fails to supply us with particulars, his record reference is to an oral statement given by defense witness Barbara Smith to detectives, which oral statement was brought out by the Commonwealth on cross-examination of the witness. The trial court properly refused appellant's request for a mistrial due to prosecutorial misconduct in withholding discovery. The challenged statement was not a written statement in the possession of the Commonwealth, nor was it a statement of an "eyewitness" as appellant implies disingenuously. Moreover, we agree with the trial court that the challenged statement "is so transient in

nature that it could not affect this matter." N.T. Trial, January 31, 1985 at 64. Appellant's twenty-fourth assignment of error also involves Barbara Smith's oral statement (regarding appellant having attended some "rock concert"), wherein appellant argues that the prosecuting attorney implied "the existence of an inconsistent statement of an uncalled witness." If such an implication existed, it was a harmless implication "so transient in nature that it could not affect this matter."

Appellant's final claim of trial error is that the court erred in denying his motion for mistrial "when the assistant district attorney, in violation of the trial court's direct orders, referred in cross-examination to witnesses the defense stated it would not call ... after having been instructed not to do so." "Point" 26, Brief for appellant at 24. Appellant's one paragraph argument here fails, again, to specify how he was prejudiced by the assistant district attorney's conduct other than to suggest that he misled the jury by commenting on the limited number of defense witnesses. This argument is without merit.

Comments by a prosecutor do not constitute reversible error unless the "unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Carpenter*, 511 Pa. 429, 439, 515 A.2d 531 (1986) (citations omitted). Furthermore, the prejudicial effect of the prosecutor's remarks must be evaluated in the context in which they occurred. *Id.* So viewed, the prosecutor's questioning of appellant here did not require a mistrial.

The Commonwealth's attorney asked appellant on cross-examination if he knew three men when he was growing up. Appellant replied "No" in each instance, and the prosecutor then asked "Are those not other witnesses you had subpoenaed for court?" N.T. Trial, January 31, 1985 at 131. The court sustained defense counsel's immediate objection, admonished the assistant district attorney about continuing

this line of inquiry, and denied the defense motion for mistrial. The assistant district attorney heeded the court's admonition and made no further inquiries along this line. We agree with the trial court that this isolated, unanswered question by the prosecutor, while improper and beyond the scope of cross-examination, was hardly grounds for a mistrial. It was, at worst, a fleeting transgression of slight prejudice to appellant, if any.

Appellant further, in two separate "Points", argues that the "cumulative effect" of all of the various errors requires reversal of his convictions. "Points" 25 and 36. We have found no errors.

*Asserted Errors at Sentencing Phase*

As noted, our standard of review of the sentencing proceeding is set forth by statute which instructs:

> The Supreme Court shall affirm the sentence of death unless it determines that:
>
> (i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;
>
> (ii) the evidence fails to support the finding of an aggravating circumstance specified in subsection (d); or
>
> (iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.C.S.A. § 9711(h)(3).

The Commonwealth presented evidence of two aggravating circumstances at the sentencing proceeding. The Commonwealth first offered, by stipulation, information regarding appellant's criminal history, which informed the jury that appellant had been previously convicted of aggravated assault, two counts of recklessly endangering another person, and possessing an instrument of crime-generally. N.T. Sentencing Hearing, February 6, 1985 at 54–55. These convictions stemmed from an incident at the Swan Bar in Philadelphia on December 11, 1981 wherein appellant shot a young lady in the left chest area and shot a man in his

elbow. The Commonwealth offered these convictions as proof of appellant's "significant history of felony convictions involving the use or threat of violence to the person." 42 Pa.C.S.A. § 9711(d)(9). The Commonwealth also presented medical and forensic evidence to demonstrate that in committing the murder of Davis Kelly, appellant "knowingly created a grave risk of death to another person in addition to the victim of the offense." 42 Pa.C.S.A. § 9711(d)(7). This evidence demonstrated that one of the bullets fired at the victim had richocheted off a solid surface and that another had passed through the victim and was, in fact, never recovered. There were several people on the porch in very close proximity to the murder victim and the shooting who could have been struck by a richochet, a "pass through" bullet, or a missed shot. The jury found both of these aggravating circumstances.

■ We are constrained to find that the Commonwealth presented insufficient evidence to establish a "significant history of felony convictions involving the use or threat of violence to the person." The Commonwealth demonstrated only one such *felony* conviction, the conviction for aggravated assault. 18 Pa.C.S.A. § 2702(a)(1). The remaining convictions arising from the incident at the Swan Bar, recklessly endangering another person, 18 Pa.C.S.A. § 2705, and possessing an instrument of crime-generally, 18 Pa.C.S.A. § 907, certainly involved violence, but the convictions constituted misdemeanors only. Accordingly, by the opinions of a majority of the members of this Court, appellant's single conviction for one felony involving violence or its threat, the single aggravated assault conviction, does not establish a "significant history of felony convictions involving the use or threat of violence." *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985) (Larsen and Papadakos, JJ., dissenting; McDermott, J., did not participate) (single prior conviction for murder of the third degree cannot constitute "significant history" of felony convictions involving violence); *Commonwealth v. Frederick*, 508 Pa. 527, 498 A.2d 1322 (1985) (Larsen, McDermott, and Papadakos, JJ., dis-

senting) (single prior conviction for voluntary manslaughter does not constitute "significant history" of felony convictions involving violence).[9]

■ The evidence does, however, support the jury's finding that in the shooting of the victim, the appellant knowingly created a grave risk of death to other persons, namely to Betty Harris and the others present on the porch who were in very close proximity to the victim, and who were in danger of being struck by an errant, richochet or "pass through" bullet. The jury was entitled to find that appellant created a "grave risk of death" to the other innocent persons on the porch near the shooting. *See Commonwealth v. Stoyko*, 504 Pa. 455, 468, 475 A.2d 714 (1984) (the wounding of another person who was in the car with the murder victim established that the defendant knowingly created the grave risk of death of another person) and *Commonwealth v. Griffin*, 511 Pa. 553, 515 A.2d 865 (1986) (defendant knowingly created a grave risk of death to others when he shot victim once in the head at close range at a party; no one else was injured).

Appellant argues, however, without citation of authority, that the aggravating circumstance set forth in subsection (d)(7) is unconstitutionally vague because it fails to define the term "grave risk of death." "Point" 28. This Court has not addressed this specific vagueness challenge to subsection (d)(7), "grave risk of death." The United States Supreme Court has, however, upheld similar statutes establishing aggravating circumstances for knowingly creating "great risks" of death against vagueness and over-breadth challenges. *Gregg v. Georgia*, 428 U.S. 153, 203–04, 96 S.Ct. 2909, 2939, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida*, 428 U.S. 242, 256, 96 S.Ct. 2960, 2968, 49 L.Ed.2d 913 (1976).

This Court has addressed and rejected vagueness challenges to various other aggravating circumstances. In

9. In response to the *Goins* and *Frederick* decisions, the General Assembly has added two aggravating circumstances justifying the imposition of the death penalty where the defendant has been convicted, either before or after the time of the offense at issue, of another murder or of voluntary manslaughter. 42 Pa.C.S.A. § 9711(d)(11) & (12).

*Commonwealth v. Fahy,* 512 Pa. 298, 516 A.2d 689 (1986), we rejected the claim that the term "significant history" was vague and overbroad, stating:

> In *Commonwealth v. Beasley,* 504 Pa. 485, 475 A.2d 730 (1984), this Court reviewed an identical claim and stated:
>
> > Appellant further contends that certain language employed in the statute's enumeration of aggravating and mitigating circumstances, to be weighed by the jury in determining whether the death penalty should be imposed, are (sic) so vague as to invite arbitrary and capricious imposition of the death penalty. The challenged language includes, *inter alia,* the phrases "significant history of prior criminal convictions" (42 Pa.C. S.A. § 9711(e)(1)), "extreme mental or emotional disturbance" (42 Pa.C.S.A. § 9711(e)(2)), "age of defendant" (42 Pa.C.S.A. § 9711(e)(4)), "participation in the homicidal act was relatively minor" (42 Pa.C.S.A. § 9711(e)(7)), "capacity of the defendant ... to conform his conduct to the requirements of law ..." (42 Pa.C. S.A. § 9711(e)(3)). In reviewing an identical claim of vagueness asserted against the corresponding portion of the death penalty statute of the State of Florida, which employed virtually identical language, the Supreme Court of the United States rejected the vagueness claim, noting that a jury's evaluation of the aggravating and mitigating circumstances, as enumerated, requires no more line drawing than is commonly required of a fact-finder in any lawsuit. *Proffitt v. Florida,* 428 U.S. 242, 257, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913, 925–926 (1976).
>
> *See also, Commonwealth v. Goins,* 508 Pa. 270, 495 A.2d 527 (1985).

We find no basis, and Appellant has not raised any novel reasons, to ignore the holdings of *Proffitt, Beasley,* and *Goins.* Therefore, Appellant's contention that 42 Pa.C.S. § 9711(d) is vague and overbroad is dismissed as being meritless.

512 Pa. at 315–16, 516 A.2d at 698. So too in the instant case, we find no basis to ignore the holdings of *Proffitt* and *Gregg*. The jury is quite capable of understanding the meaning of "grave risk" and of applying its common sense and experience to the facts to determine whether a grave risk had indeed been created, as it did in this case. Accordingly, we reject appellant's vagueness challenge.

In mitigation, appellant introduced testimony of a prison counselor who had counseled appellant (the jury did not learn that this counselor knew and worked with appellant in prison) and of a psychological services associate who had evaluated appellant. These witnesses testified that appellant was of "defective intelligence," was highly unskilled, and that he had an I.Q. of 76. Counsel argued to the jury that there were three mitigating circumstances shown: that appellant was "under the influence of extreme mental or emotional disturbance;" the diminished "capacity of [appellant] to appreciate the criminality of his conduct or to conform his conduct to the requirements of law;" and that the "character and record of the [appellant] and the circumstances of his offense" were such that the death penalty was unwarranted. 42 Pa.C.S.A. § 9711(e)(2), (3) and (8), respectively. The jury, however, found no mitigating circumstances. The jury therefore returned the sentence of death based upon its finding of one or more aggravating circumstances and no mitigating circumstances. 42 Pa.C. S.A. § 9711(c)(1)(iv). Since "the jury found the presence of one aggravating circumstance and found no mitigating circumstances, the sentence of death is upheld even though another aggravating circumstance is held invalid." *Commonwealth v. Christy*, 511 Pa. 490, 510, 515 A.2d 832 (1986), citing *Commonwealth v. Beasley, supra* at 504 Pa. 500, 475 A.2d 738.

Appellant raises several issues pertaining to his proffered mitigating circumstances regarding his low level intelligence. First he argues that the court erred in refusing to instruct the jury that "his low I.Q. alone is sufficient to return a sentence of life prisonment." "Point" 32. He

offers no authority to support this proposition and we know of none. Under our statutory sentencing procedures in capital cases, it would have been erroneous to so instruct the jury, since the legislature has not designated low intelligence specifically as a mitigating circumstance, and since it is the jury that has been assigned the solemn task of finding which aggravating and mitigating circumstances exist and weighing such circumstances to determine whether the death penalty is appropriate. *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1, 20 (1987).

Appellant also asserts that the court erred in failing to admit "the report of a psychologist who examined [appellant] in 1971, which showed [his] I.Q. 76," and in failing to admit "into evidence the report of a mental health professional named Willis, who examined petitioner at Farview [sic] State Hospital in 1971...." "Points" 30 and 31, Brief for appellant at 26–27. Appellant asserts that these reports qualified as exceptions to the hearsay rule under the "business records exception." These arguments are without merit. Such reports containing opinions, diagnoses and conclusions are not admissible under the business records exception. *Commonwealth v. Harris*, 492 Pa. 389, 394, 424 A.2d 1245, 1248 (1981). The reports which appellant sought to introduce were also remote in time, and their authors were unknown—the author of the first report was identified only as "H.E.S." and the author of the second as "Willis." Under these circumstances, the court properly excluded these reports. Moreover, the evidence of appellant's low I.Q. and defective intelligence was placed before the jury and was uncontradicted.

Finally, appellant argues that it is unconstitutional to place the burden of proving mitigating circumstances on the defendant. We have considered and rejected this contention on several occasions. *See, e.g., Commonwealth v. Zettlemoyer, supra* at 500 Pa. 64–66, 454 A.2d at 962–63.

We have reviewed the record and we find sufficient evidence to support the finding of an aggravating circumstance, § 9711(d)(7). We also find that the sentence was

not the product of passion, prejudice or any other arbitrary factor. 42 Pa.C.S.A. § 9711(h)(3)(ii) and (i). Additionally, we have reviewed the data and information pertaining to similar cases that has been compiled by the Administrative Office of Pennsylvania Courts pursuant to this Court's directive. *See Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700, 707–08 (1984), *cert. denied* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). Our review of that data discloses that the sentence of death is neither excessive nor disproportionate to that imposed in similar cases involving this aggravating circumstance and no mitigating circumstances. *See Commonwealth v. Stoyko*, 504 Pa. 455, 475, 475 A.2d 714, 724 (1984), *cert. denied* 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984).

*Post-trial and Miscellaneous Matters*

Appellant further asserts that certain after discovered evidence requires a new trial. Appellant sought a new trial based on the "after discovered" evidence that Barbara Smith told defense counsel, on February 26, 1986, that she planned the killing with Kimberleigh Green and Levi Rucker and that she saw Levi Rucker commit the murder. The trial court denied the motion for a new trial, which appellant asserts was erroneous. Appellant also claims the court erred in refusing to grant him a continuance to locate, serve and present the testimony of two witnesses who, Barbara Smith purportedly told counsel at a court hearing on April 16, 1986, would state that Levi Rucker told them he had shot Davis Kelly. "Points" 35 and 37. These claims are without merit.

After discovered evidence may provide a basis for a new trial if it is demonstrated that the evidence

(1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Buehl,* 510 Pa. 363, 393, 508 A.2d 1167, 1182 (1986). Furthermore, the proposed new evidence must be producible and admissible. *Commonwealth v. Scott,* 503 Pa. 624, 628, 410 A.2d 91, 93 (1983).

In the instant case, whatever Barbara Smith may have told counsel on February 26, 1986, she did not tell the court anything that would justify a new trial. In fact, she refused to tell the court anything. The docket entries show that, at a hearing on April 16, 1986 on this motion for a new trial and other matters, Ms. Smith refused to testify. There is no transcript from this hearing, but the relevant docket entry reads: "Witness Smith exercises Fifth Amendment privilege and refuses to testify upon being called by defense." Thus, as in *Commonwealth v. Scott, supra,* "appellant has failed to show this alleged exculpatory statement would be producible or admissible at his trial." 503 Pa. at 630, 470 A.2d at 95. *See also Commonwealth v. Kent,* 355 Pa. 146, 49 A.2d 388 (1946) (alleged after discovered evidence was but a "persistent and importuning effort on the part of defendant to have his sister incriminate herself as perpetrator and exonerate himself," and fell short of justifying new trial). The court did not err, therefore, in refusing to grant relief based on appellant's after discovered evidence motion.

 Appellant has also filed with this Court a *pro se* Motion for Withdrawal of Counsel Inter Alia Ineffective Assistance of Counsel. In this motion, appellant sets forth general allegations that his trial counsel was ineffective in his representation of him at trial.[10] Appellant has not set forth any of the particulars as to how counsel's asserted ineffective assistance may have prejudiced him or how an alternative strategy would have benefited him, i.e., he raises these assertions in a vacuum. *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981). We believe it would be best to treat this motion as an application for appoint-

10. Specifically, appellant questions counsel's failure: "to cross examine witnesses;" "to call important witnesses in my behalf;" "to request the 1979 notes of testimony ...;" "to request that the jurors be allowed to view the scene;" and "to respond to my letters."

ment of new counsel to represent appellant in further proceedings under the Post–Conviction Hearing Act, and we will remand this matter to the Court of Common Pleas of Philadelphia County for appointment of new counsel for that purpose. *Commonwealth v. Carpenter*, 511 Pa. 429, 445, 515 A.2d 531 (1986).

For the foregoing reasons, we affirm appellant's convictions and his judgments of sentence, including his judgment of sentence of death.[11] We remand the matter to the Court of Common Pleas of Philadelphia County for the appointment of new counsel to represent appellant in further proceedings under the Post Conviction Hearing Act.

PAPADAKOS, J., filed a concurring opinion.

STOUT, J., did not participate in the consideration or decision of this matter.

PAPADAKOS, Justice, concurring.

I join with the majority in affirming the Appellant's convictions and his judgments of sentence, including his judgment of sentence of death. I must write separately, however, to continue my disassociation with the majority view in *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985), and *Commonwealth v. Frederick*, 508 Pa. 527, 498 A.2d 1322 (1985), regarding the reading of aggravating circumstance at Section 9711(d)(9) (42 Pa.C.S.) "a significant history of felony convictions involving the use or threat of violence to the person."

I am still of the view, as confirmed by the legislature in its enactment of 42 Pa.C.S. Section 9711(d)(11) and (12) in response to *Goins*, that the first degree murder of Davis Kelly by Appellant is properly joined with Appellant's convictions of aggravated assault (the shooting of a woman in the Swan Bar) to constitute a "significant history" as required under 42 Pa.C.S. Section 9711(d)(9).

---

11. The prothonotary of the Eastern District is directed to transmit to the Governor, as soon as possible, the full and complete record of all proceedings below and of review by this Court. 42 Pa.C.S.A. § 9711(i).