J-S48001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK BRAWLEY | | |
| | | No. 2869 EDA 2019 |
| Appellant | | |

Appeal from the Judgment of Sentence Entered July 20, 2018
In the Court of Common Pleas of Monroe County Criminal Division
at No(s):  CP-45-CR-0002612-2017

BEFORE:  KUNSELMAN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED:  MARCH 19, 2021**

Mark Brawley appeals the judgment of sentence imposed following his convictions for simple assault, recklessly endangering another person ("REAP"), and the summary offense of harassment.[1]  We affirm.

On October 11, 2017, while on probation in two prior cases, Brawley was involved in an incident at the home of his employer ("the victim"), who is the owner of a landscaping business.  On the day of the incident, Brawley reported to the victim's house to load a truck with materials for a landscaping job.  A verbal dispute erupted.  The dispute escalated and became physical when Brawley threw a log at the victim, striking him in the face.  Brawley also

---

[1] *See* 18 Pa.C.S.A. §§ 2701(a)(1), 2705, 2709(a).

struck the victim with a shovel. The victim sustained facial fractures, swelling, and bleeding.

The trial court summarized the relevant procedural history that followed:

> [Brawley] was arrested and charged with aggravated assault [circumstances manifesting extreme indifference to the value of human life], . . . simple assault, . . . a misdemeanor of the second degree; REAP, . . . a misdemeanor of the second degree; and harassment . . .. Later, a count of aggravated assault [use of a deadly weapon] . . . was added.
>
> * * *
>
> On May 8, 2018, a jury was selected. [During *voir dire*, there was some confusion regarding juror No. 21, who indicated that he had significant mental health issues for which he was on medication, and had prior dealings with the police which prevented him from being fair and impartial. The Commonwealth mistakenly believed that juror No. 21 had been excused for cause. Accordingly, when juror No. 21 was thereafter seated, the Commonwealth moved for a mistrial. Defense counsel objected to that motion. The trial court then denied the motion for mistrial.] . . . The evidentiary portion of [Brawley's] trial began on May 29, 2018. The Commonwealth called the victim, his wife, several other witnesses, including police officers, and submitted 24 exhibits, including photographs of the shovel and log used by [Brawley] in the assault. [Brawley] testified, called another witness, and submitted an exhibit. [Brawley] asserted that the victim initiated a series of aggressive actions against him and that he acted in self-defense.
>
> The next day, the jury convicted [Brawley] of simple assault and REAP, acquitted him of aggravated assault [circumstances manifesting extreme indifference to the value of human life], and was unable to reach a verdict on aggravated assault [use of deadly weapon]. [The trial

court] found [Brawley] guilty of [the summary offense of] harassment.

* * *

[At the] July 20, 2018, . . . sentencing hearing . . . [defense counsel] also argued that the REAP and simple assault convictions merged for sentencing purposes . . ..

The victim addressed the court and indicated that he was lucky not to be blind. The assistant district attorney then argued that . . . simple assault and REAP do not merge. He asked for consecutive sentences of 9 to 18 months on each count. . . ..

At the conclusion of the hearing, [the trial court] sentenced [Brawley] to concurrent, standard range sentences of 8 to 16 months' incarceration, plus 8 months of consecutive probation, on the simple assault and REAP convictions. [No sentence was imposed on the summary harassment conviction.] . . ..

On July 30, 2018, [Brawley] timely filed a multi-count post-sentence motion. In the motion, . . . [Brawley] alleged that there was insufficient evidence to sustain the convictions, asserted that the convictions were against the weight of the evidence, . . . and claimed that the court abused its discretion in striking a juror for cause after *voir dire* had been completed but before the selected jurors had been formally seated.

[The trial court] did not rule on [Brawley's] post-sentence motion within 120 days. Accordingly, on November 27, 2018, the motion was deemed denied under Pa.R.Crim.P. 720(B)(3)(a). However, the Clerk of Courts did not enter a deemed denial order pursuant to Rule 720(B)(3)(c).

* * *

On September 24, 2019, a hearing was convened . . . .. During the hearing, procedural and jurisdictional issues relating to the deemed denial, the fact that no order commemorating the deemed denial was entered of record

- 3 -

or served, and the overall passage of time were discussed. At the conclusion of the hearing, the [trial court] issued an order finding that [Brawley's] post-sentence motion had been deemed denied, directing the clerk of courts to enter and serve the order, and continuing bail pending appeal conditioned on [Brawley] filing a timely appeal.

[Brawley] then filed the instant appeal. Since the appeal was timely filed in accordance with the September 24, 2019 order, [Brawley] remains on bail pending appeal. [Both Brawley and the trial court complied with Pa.R.A.P. 1925.]

Trial Court Opinion, 12/23/19, at 1-5 (footnotes, references to the record, and unnecessary capitalization omitted).

Brawley raises the following issues for our review:

1. Did the court abuse its discretion by not granting [the] motion for new trial after it removed a juror at the request of the Commonwealth after jury selection was completed?

2. Did the court abuse its discretion by failing to merge the convictions for sentencing purposes?

3. Did the court abuse its discretion by not entering a judgment of acquittal as to [REAP], where there was insufficient evidence to show [Brawley] placed another person in danger of death or serious bodily injury by acting in self-defense when throwing a log in the direction of another person?

4. Did the court abuse its discretion by not entering a judgment of acquittal as to . . . simple assault, where there was insufficient evidence to convict on as there was insufficient evidence to show [Brawley] attempted to do bodily harm where he was acting in self-defense when throwing a log in the direction of another person?

5. Did the court abuse its discretion by not entering a judgment of acquittal as to [REAP], where the conviction goes against the weight of the evidence when there was

evidence [Brawley] was acting in self-defense and no evidence the person was in danger of death or serious bodily injury?

6. Did the court abuse its discretion by not entering a judgment of acquittal as to . . . simple assault, where the conviction goes against the weight of the evidence to convict when there was evidence [Brawley] was acting in self-defense?

7. Did the court abuse its discretion at sentencing when the court gave [Brawley] a sentence of not less than eight (8) months to a maximum of sixteen (16) months on both counts to be run concurrently, where [Brawley] believes the Court did not take into consideration as a mitigating factor the amount of time since [Brawley's] last conviction for simple assault being over twenty (20) years ago?

Brawley's Brief at 7-8 (unnecessary capitalization omitted, issues reordered for ease of disposition).

In his first issue, Brawley contends that the trial court abused its discretion by denying the Commonwealth's motion for mistrial. Our standard of review of a court's denial of a request for mistrial is as follows:

A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

*Commonwealth v. Tejeda*, 834 A.2d 619, 623 (Pa. Super. 2003) (internal citations and footnote omitted).

- 5 -

The Commonwealth's motion for mistrial arose during the juror *voir dire* process. The purpose of *voir dire* is to empanel a fair and impartial jury. **See Commonwealth v. Craver**, 688 A.2d 691, 697 (Pa. 1997). The scope of *voir dire* rests in the sound discretion of the trial court and will not be reversed on appeal in the absence of palpable error. **Commonwealth v. Smith**, 540 A.2d 246 (Pa. 1988).

In non-capital cases such as the one currently before us, the trial court is vested with the discretion to select between two methods of *voir dire*. **See** Pa.R.Crim.P. 631. In this case, the trial court opted to use the individual *voir dire* and challenge system. Rule 631 directs the procedure for this method, as follows:

> (a) *Voir dire* of prospective jurors shall be conducted individually and may be conducted beyond the hearing and presence of other jurors.
>
> (b) Challenges, both peremptory and for cause, shall be exercised alternately, beginning with the attorney for the Commonwealth, until all jurors are chosen. Challenges shall be exercised immediately after the prospective juror is examined. Once accepted by all parties, a prospective juror shall not be removed by peremptory challenge. Without declaring a mistrial, a judge may allow a challenge for cause at any time before the jury begins to deliberate, provided sufficient alternates have been selected, or the defendant consents to be tried by a jury of fewer than 12, pursuant to Rule 641.

Pa.R.Crim.P. 631(E)(1)(a), (b).

Dismissal for cause and dismissal by peremptory challenge are very different things. While a peremptory challenge may be exercised for any reason or no reason at all, a challenge for cause is directed at a prospective

juror's ability to serve fairly and impartially. *See Commonwealth v. Chmiel*, 889 A.2d 501, 518 n.13 (Pa. 2005). There are two types of situations in which challenges for cause should be granted: (1) when the potential juror has such a close relationship, be it familial, financial or situational, with parties, counsel, victims, or witnesses, that the court will presume the likelihood of prejudice; and (2) when the potential juror's likelihood of prejudice is exhibited by his conduct and answers to questions at *voir dire*. *See Commonwealth v. Colon*, 299 A.2d 326, 327 (Pa. Super. 1972). The decision on whether to disqualify is within the sound discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion. *See Commonwealth v. Black*, 376 A.2d 627 (Pa. 1977).

The trial court summarized the events underlying this issue, as follows:

> In this case, jury selection was uneventful up through the point at which jurors had been excused for cause, the parties had exercised peremptory challenges, and the trial court had begun seating selected jurors and excusing those who had not been chosen. At that point, a juror whom the assistant district attorney ("ADA") mistakenly believed had been excused was called to be seated. The ADA brought the matter to the attention of the trial court. A long, multi-segmented discussion between the Court and counsel for both parties ensued. *See* N.T., 5/8/[18], pp. 33-53.

> The discussion revealed that the ADA incorrectly marked-up his list so that he believed prospective juror No. 21 had been stricken for cause. Because of that error, prospective juror No. 22 rather than 21 was stricken. [The trial court] initially suggested that the Commonwealth might have to live with its error. However, when the ADA pointed out that the juror said he was on serious medications and, further, could not be fair and impartial due to prior encounters with the police, discussion ultimately turned to potential remedies.

The ADA seized on one of the first potential remedies mentioned, and asked [the trial judge] to declare a mistrial so that a new jury could be selected. Significantly, [Brawley's] attorney objected to that request. Ultimately, believing that the prospective jury pool, including persons not selected for this case, had been dismissed, [the trial court] denied the motion.

The ADA then asked that No. 21 be stricken for cause. Counsel for [Brawley] opposed the request. At that point, it was learned that the entire prospective jury pool had been excused for lunch but would be returning. [The trial court] excused the jurors and alternates who had been chose[n] for this case for lunch and indicated he would take the Commonwealth's request under advisement.

After a break, additional potential remedies were discussed and the Commonwealth renewed its request to dismiss prospective juror No. 21. The stated reasons were that during questioning No. 21 stated he was bipolar with severe swings between mania and depression, that he was on significant medications, and that he was prejudiced against the police. In the end, counsel for [Brawley] did not dispute that No. 21 had revealed his mental health issues and prejudice. Nonetheless, he objected to removal of juror No. 21 because the remainder of the panel was comprised of female jurors and he wanted at least one male on the jury. [Brawley's] counsel also generally stated that if he knew No. 21 was stricken he might have exercised peremptory challenges differently. He did not, however, expand on his general assertion, which most likely was intended to mean that he would have attempted to use his peremptory challenge to avoid an all-female jury.

Ultimately, [the trial court] excused prospective juror No. 21 for cause and substituted the first alternate . . . based on No. 21's candid answers about his mental health and prejudice against the police.

Trial Court Opinion, 12/23/19, at 18-20 (unnecessary capitalization omitted).

Brawley claims that the only remedy for the late removal of juror No. 21 was a mistrial. He further argues that he was prejudiced by this late removal because prospective juror No. 21 was the only male on the panel.

- 8 -

Brawley claims that defense counsel would have made different choices had the Commonwealth struck that juror. Brawley additionally claims that the Commonwealth was, in essence, granted an extra peremptory challenge, giving it an unfair advantage in the selection process. Brawley maintains that "[t]he Commonwealth cannot just be able to say after they are done, oops I made a mistake, and please let me take one more person off." Brawley's Brief at 19.

The trial court considered Brawley's *voir dire* issue and concluded that the issue was waived and, further, that it lacked merit. It reasoned:

> Initially, we note that while [Brawley] is now asserting that "[t]he [c]ourt abuse [*sic*] its discretion by not granting motion for new trial after it removed a juror at the request of the Commonwealth after jury selection was completed," at the time the Commonwealth moved for a mistrial when the juror issue first came to light, [Brawley] **objected to** the motion. (N.T., 5/8/[18], pp. 37-39). If [Brawley] had really believed that he was entitled to or would somehow be prejudiced by an all-female jury, that the seated jury was not fair and impartial, or that the juror miscue threw off his other challenges, he could at the time have concurred with or joined in the Commonwealth's motion for a mistrial, moved for a mistrial himself, or agreed with or requested one of the other options and potential remedies [the trial judge] discussed with the attorneys. Since [Brawley] objected to the functional equivalent to the remedy he is now seeking, he waived this assignment of error.[fn]

> _____
> [fn]While [the trial court] denied the Commonwealth's motion for a mistrial, [it] did so because [it] had erroneously been informed that the entire jury pool, including prospective jurors who had not been chosen for this case, had been dismissed, not because he determined that a mistrial was not proper remedy. (N.T., 5/8/[18], p. 39). Indeed, [the trial court] suggested and was amendable to the mistrial remedy.

> Before the Commonwealth's motion to excuse prospective juror No. 21 was granted, the parties and [the trial court] had been informed that the jury pool would be returning after lunch. Thus, had [Brawley] really wanted a new or different jury to hear the case, he could have had a mistrial.
>
> _____
>
> Additionally, striking prospective juror No. 21 for cause and substituting an alternate was well within [the trial court's] discretion. In this regard, there is and can be no question that the answers given by juror No. 21 - severe mental health issues, significant medications, and prejudice against police - merited the juror's disqualification, even though the challenge was raised and granted out of the typical order. As discussed, the purpose of *voir dire* is to empanel a fair and impartial jury. Once other options were explored and rejected or objected to, if prospective juror No. 21 was not stricken, a fair and impartial jury simply would not have been empaneled.

Trial Court Opinion, 12/23/19, at 22-23 (emphasis in original, additional footnote omitted)

Here, Brawley never moved for a mistrial. Although he objected to the Commonwealth's renewed motion to disqualify juror no. 21 for cause, Brawley never requested a mistrial upon the trial court's ruling to grant that motion. **See** N.T., 5/8/18, at 47-48. Indeed, after the trial court excused juror No. 21 for cause and seated the first alternate juror, Brawley's counsel did not raise any further objection or make any motion regarding that ruling, even when asked by the trial court if there was anything further that counsel wished to bring to the court's attention. **See id**. at 50-52. As noted by the trial court, Brawley also objected to the Commonwealth's earlier motion for mistrial.

- 10 -

Thus, having failed to move for a mistrial in the court below, Brawley cannot now fault the trial court for not granting him one.

Moreover, we discern no abuse of discretion by the trial court in excusing juror No. 21 for cause based on his candid admission of mental health issues, significant medication, and bias toward police. While Brawley attempts to characterize the dismissal of juror No. 21 as an additional and belated peremptory challenge exercised by the Commonwealth, the record makes clear that juror No. 21 was excused **for cause** in accordance with Pa.R.Crim.P. 631(E)(1)(b), which permits the removal of any juror for cause up until the time the jury begins to deliberate so long as sufficient alternates have been selected. Here, the jury had not begun deliberations and sufficient alternates had been selected and agreed to by the parties. As such, the trial court did not abuse its discretion in excusing juror No. 21 for cause and seating the first alternate juror. Accordingly, Brawley's first issue merits no relief.

In his second issue, Brawley contends that the trial court erred in failing to merge his sentences for REAP and simple assault, and that such error requires this Court to vacate his judgment of sentence and remand for resentencing.

Whether Brawley's convictions merge for the purposes of sentencing is a question implicating the legality of his sentence. **See Commonwealth v. Raven**, 97 A.3d 1244, 1248 (Pa. Super. 2014). Consequently, our standard

of review is *de novo* and the scope of our review is plenary. ***See id***. (*citing*

***Commonwealth v. Collins***, 764 A.2d 1056, 1057 n.1 (Pa. 2001)).

The legislature has provided that:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. Thus, merger is prohibited unless two distinct facts are present: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included in the statutory elements of the other. ***See Commonwealth v. Baldwin***, 985 A.2d 830, 833 (Pa. 2009).

The crime of REAP is committed when a person "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. Serious bodily injury means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. ***See*** 18 Pa.C.S.A. § 2301.

A person commits the crime of simple assault if he attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another. ***See*** 18 Pa.C.S.A. § 2701(a)(1). An attempt occurs when, with intent to commit a specific crime, the person does any act which constitutes a substantial step toward the commission of that crime. ***See*** 18 Pa.C.S.A. § 901. Bodily injury

- 12 -

means impairment of physical condition or substantial pain. *See* 18 Pa.C.S.A. § 2301.

The trial court determined that, although the crimes arose from the same criminal episode, "the elements of the two crimes are different[,] . . . designed to prohibit different wrongs and harms[, and do] not merge for sentencing purposes. Trial Court Opinion, 12/23/19, at 12.[2]

Prior to the enactment of 42 Pa.C.S.A. § 9765, this Court provided inconsistent rulings on whether convictions for REAP and simple assault merged for sentencing purposes. *See e.g.*, *Commonwealth v. Berrena*, 617 A.2d 1278, 1280 (Pa. Super. 1992) (holding that simple assault and REAP merged); *cf Commonwealth v. Gouse*, 429 A.2d 1129, 1133 (Pa. Super. 1981) (holding that simple assault is not a lesser-included offense of REAP).

Following the enactment of § 9765, however, this Court has concluded that simple assault is *not* a lesser-included offense of REAP, and the two crimes *do not merge* for sentencing purposes. *See Commonwealth v. Calhoun*, 52 A.3d 281, 286 (Pa. Super. 2012), *appeal denied*, 67 A.3d 793 (Pa. 2013) (holding that, whereas the simple assault statute requires bodily

_____

[2] Alternatively, the trial court concluded that, because it imposed the same sentence for each offense and ordered the sentences to run concurrently, "[Brawley] was not prejudiced to the point that any relief or remedy would be warranted since even if the offenses should have merged he will not spend any more time in jail, on probation, or on parole." Trial Court Opinion, 12/23/19, at 12.

injury or the attempt to cause bodily injury, the REAP statute contemplates "a crime of assault which requires the creation of danger" of serious bodily injury or death). As the crimes of simple assault and REAP do not merge for sentencing purposes, Brawley's second issue merits no relief.

In his third and fourth issues, Brawley challenges the sufficiency of the evidence supporting his convictions for REAP and simple assault. In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, "the jury, which

- 14 -

passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." ***Commonwealth v. Ramtahal***, 33 A.3d 602, 607 (Pa. 2011).

Brawley contends that the evidence was insufficient to support his REAP conviction because there was no serious bodily injury and no reasonable inferences to be drawn from the evidence that would lead one to believe Brawley placed the victim in danger of death or serious bodily injury. He claims "it is complete speculation that the intent was to cause death or serious bodily injury." Brawley's Brief at 23-24. He further argues that, if the jury acquitted on the charge of aggravated assault (circumstances manifesting extreme indifference to the value of human life), then it cannot find REAP because that charge has the same element of serious bodily injury or death. Lastly, Brawley argues that because he raised a claim of self-defense, the burden was on the Commonwealth to prove beyond a reasonable doubt that his actions were not justifiable self-defense. Brawley points to his own testimony that the victim provoked him, and asserts that there was insufficient evidence to convict him of REAP where the Commonwealth failed to show that Brawley had the *mens rea* to commit this crime.

For similar reasons, Brawley contends that the evidence was insufficient to support his simple assault conviction. According to Brawley, the Commonwealth needed to prove beyond a reasonable doubt that Brawley attempted to cause or intentionally, knowingly, or recklessly caused bodily

injury to another. Brawley argues that, because he claimed self-defense, the Commonwealth had the burden of proving that his actions were not justifiable self-defense. Brawley asserts that the Commonwealth failed to meet this burden because there are no reasonable inferences to be drawn from the evidence that would lead one to believe Brawley acted to cause, either intentionally, knowingly, or recklessly, bodily injury outside of trying to defend himself. Brawley maintains that, although he threw a log in the direction of the victim, inferences of intention alone are not enough to show beyond a reasonable doubt that he is guilty of simple assault. Brawley argues that "it is inconceivable that the jury was able to determine beyond a reasonable doubt that [Brawley] threw the log with the intent to cause injury to the victim and was not just throwing the log in the direction of the victim to get him to stop his attack." Brawley's Brief at 38-39.

The trial court considered Brawley's sufficiency claims and determined that they lacked merit. The trial court reasoned:

> Among other evidence, the victim testified that [Brawley] threw a log of wood at him and hit him with a shovel. (N.T., 05/29/18[,] pp. 37-38; 75). Photos of the shovel and the log were submitted as exhibits. (*Id.* at 54-56, Exhibits 18 and 22). The victim's wife saw [Brawley] pick up a log of wood and threaten her husband with it. (*Id.* at 87). She also observed [Brawley] holding the shovel with the blade up and standing close to her husband while he was lying on the ground. (*Id.* at 88-90). Officer Brown, the first officer to arrive on scene, observed that the victim was bleeding and had major swelling on his face. (*Id.* at 126).
>
> [Brawley] was taken into custody and the victim was transported to Lehigh Valley Pocono Hospital. At the hospital, the victim's wife photographed her husband's injuries and pieces of

wood that were stuck on or in his face. The photographs were submitted as exhibits. (*Id.* at 60-61, Exhibits 20-22). A diagnostic scan of the victim's head and neck revealed multiple facial fractures. The victim's medical records were admitted into evidence. (*Id.* at 70, Exhibits 24).

Against this and other evidence, [Brawley] testified that he acted in self-defense. Among other things, he stated that the victim operated a skid-steer in a threatening manner when the dispute began to escalate. According to his testimony, the victim flipped the log splitter on which [Brawley] was sitting and dumped piles of debris on him. [Brawley] further stated that he felt his life was in danger and that is why he picked up a log out of the pile of debris and threw it. (*Id.* at 168-88; 205).

Viewed in light of the applicable standards, the evidence presented by the Commonwealth is amply sufficient to establish the elements of simple assault and REAP. In addition, the jury heard but obviously rejected the self-defense claim. It was entirely within the jury's province to do so.

Trial Court Opinion, 12/23/19, at 14-15 (unnecessary capitalization omitted).

Viewing the evidence in the light most favorable to the Commonwealth, as we must, we discern no abuse of discretion by the trial court in finding that the evidence was sufficient to support the convictions for REAP and simple assault. The jury was free to disregard Brawley's version of events as well as his claim that he acted in self-defense. The jury instead chose to believe the prosecution's evidence that Brawley threw a log in the victim's face and hit him with a shovel, causing multiple facial fractures, bleeding and swelling.

Importantly, an individual may be convicted of REAP "if he recklessly engages in conduct which places *or may place* another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705 (emphasis added). The statute does not require any particular person to be actually placed in danger,

but deals with potential risks, as well as cases where a specific person actually is within the zone of danger. **See *Commonwealth v. Edwards***, 175 A.3d 359 (Pa. Super. 2017). In this case, the jury properly found that Brawley's actions in throwing a log which hit the victim in the face, as well as hitting him with a shovel, could have resulted in damage or trauma to him. Brawley's culpability is not reduced by the fortunate happenstance that the victim did not lose his vision or sustain brain damage. Thus, the Commonwealth proved all the elements of REAP beyond a reasonable doubt.

The evidence was also sufficient to sustain the verdict for simple assault. As discussed above, a person is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). Here, the evidence presented by the Commonwealth sufficiently established that Brawley threw a log at the victim, which struck him in the face with enough force to cause visible and invisible injuries, and hit him with a shovel. This evidence is sufficient to support the jury's finding that Brawley was guilty of simple assault. Thus, as the evidence when viewed in the light most favorable to the Commonwealth supports Brawley's convictions for REAP and simple assault.

Finally, the fact that the jury acquitted Brawley of aggravated assault (circumstances manifesting extreme indifference to the value of human life) does not warrant a different result. Pennsylvania courts have long recognized that jury acquittals may not be interpreted as specific factual findings with

regard to the evidence, as an acquittal does not definitively establish that the jury was not convinced of a defendant's guilt. ***Commonwealth v. Moore***, 103 A.3d 1240, 1246 (Pa. 2014). Rather, it has been the understanding of the courts of this Commonwealth that an acquittal may merely show lenity on the jury's behalf, or that "the verdict may have been the result of compromise, or of a mistake on the part of the jury." ***Id***. Accordingly, Brawley's sufficiency challenges merit no relief.

In his fifth and sixth issues, Brawley contends that the convictions for REAP and simple assault are against the weight of the evidence. The following legal principles apply when a challenge to the weight of the evidence supporting a conviction is presented to the trial court:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

***Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000) (citations, footnotes and quotation marks omitted). Thus, to allow an appellant "to

prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court." **Commonwealth v. Talbert**, 129 A.3d 536, 545 (Pa. Super. 2016) (internal citation omitted).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> **Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*.** Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in original, internal citations omitted).

Brawley argues that his conviction for REAP is against the weight of the evidence for the same reasons that he claims the evidence was insufficient to support that conviction. Indeed, Brawley essentially restates his sufficiency argument for his REAP conviction, word for word, in his weight challenge for that conviction. In relation to his simple assault conviction, Brawley merely

argues that the evidence showed he was acting in self-defense, and that there was no evidence that he intended to cause injury. Brawley's Brief at 41.

Importantly, by once again claiming that certain elements of REAP and simple assault went unproven at trial, Brawley conflates his weight of the evidence challenges with his sufficiency challenges. A challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence. *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006). Whereas a sufficiency claim asserts that the Commonwealth failed to prove one or more elements of a crime, a weight challenge concedes that the Commonwealth produced sufficient evidence of each element of a crime, but questions which evidence is to be believed. *Id*.

Here, Brawley does not indicate in his weight challenges that certain evidence was so clearly of greater weight than other evidence that the verdicts of guilt shock one's sense of justice. Instead, he asserts that the verdicts of guilt shock one's sense of justice because certain elements of REAP and simple assault went unproven at trial. Specifically, Brawley argues that the verdict of guilt for REAP shocks one's sense of justice because the Commonwealth failed to prove serious bodily injury, a danger of serious bodily injury, and that he had the requisite *mens rea*. **See** Brawley's Brief at 34-35. Similarly, Brawley claims that the verdict of guilt for simple assault shocks one's sense of justice due to the "lack of any evidence that [Brawley] was intentionally trying to cause injury." *Id*. at 41. Moreover, in his weight challenges, Brawley

primarily asks this Court to "set aside the guilty verdict and enter a judgment of acquittal." Brawley's Brief at 35, 41.[3] This is the appropriate remedy for a successful sufficiency challenge, rather than for a weight challenge. **See Commonwealth v. Ruffin**, 463 A.2d 1117, 1118 n.5 (Pa. Super. 1983) (holding that the appropriate remedy for an insufficiency claim would be a discharge and dismissal of all charges). As Brawley failed to properly advance his weight of the evidence claims, we find they are without merit.

Moreover, the trial court considered Brawley's weight challenges and determined that his guilty verdicts for REAP and simple assault did not shock one's conscious. The trial court reasoned:

> In this case, as discussed and as the weight claims concede, the evidence presented by the Commonwealth was sufficient to support both verdicts. [Brawley] testified, called another witness, submitted an exhibit, and claimed that his actions were legally justified. In addition, the Commonwealth's witnesses were cross-examined. The jury heard and observed all witnesses. By its verdict, the jury obviously rejected [Brawley's] self-defense claim and other contrary evidence. It was entirely within the jury's province to do so and, since there was support for the jury's conclusions and the verdict was not so contrary to the evidence as to shock one's sense of justice, there was and is no basis to overturn the findings of guilt and award a new trial.
>
> Simply, there was ample evidence to support the verdict and the jury's findings of guilt were not against the

_____

[3] The sole remedy for a challenge to the weight of the evidence is a new trial. **See Commonwealth v. Whiteman**, 485 A.2d 459, 461 (Pa. Super. 1984). While Brawley primarily seeks the remedy of an acquittal, he does ask for a new trial as an alternative remedy. **See** Brawley's Brief at 35, 41.

weight of the evidence. [Brawley's] weight and sufficiency challenges are bootless.

Trial Court Opinion, 12/23/19, at 16-17 (footnote omitted).

As discussed above, we give the gravest consideration to the findings and reasons advanced by the trial court when reviewing its determination that the verdict is not against the weight of the evidence. In this matter, we discern no abuse of discretion by the trial court in arriving at its determination that the verdicts of guilt did not shock its conscious. Accordingly, Brawley's weight challenges merit no relief.

In his final issue, Brawley contends that the trial court abused its discretion in sentencing him. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four[-]part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [**see**] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [**see**] 42 Pa.C.S.A. § 9781(b).

**Moury**, 992 A.2d at 170 (citation omitted). When an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. **Commonwealth v. Yanoff**, 690 A.2d

260, 267 (Pa. Super. 1997); *see also Commonwealth v. Tuladziecki*, 522 A.2d 17, 18 (Pa. 1987); 42 Pa.C.S.A. § 9781(b).

In the instant case, Brawley filed a timely notice of appeal and preserved his discretionary sentencing claim in a timely post-sentence motion. However, Brawley's brief has a fatal defect in that it does not include a separate Rule 2119(f) statement. Pursuant to Rule 2119(f), "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter **shall** set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f) (emphasis added). The Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated (*e.g.*, the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). *See Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa. Super. 2000). Additionally, the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm. *Id*. Generally, an appellate court will only evaluate substantive discretionary sentencing claims that were relied upon in the Rule 2119(f) concise statement. *See Commonwealth v. Feucht*, 955 A.2d 377, 384 (Pa. Super. 2008).

Here, Brawley has not included a Rule 2119(f) statement in his brief. However, when the appellant has not included a Rule 2119(f) statement and

the appellee has not objected, this Court may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate, or enforce the requirements of Pa. R.A.P. 2119(f) *sua sponte*, *i.e.*, deny allowance of appeal. **Commonwealth v. Kiesel**, 854 A.2d 530, 533 (Pa. Super. 2004) (citation omitted).

Here, the Commonwealth has not objected to Brawley's failure to include a Rule 2119(f) statement in his brief. Indeed, the Commonwealth did not file a brief in this matter. Therefore, we may reach our own conclusion as to whether Brawley should be permitted to proceed with this appeal. **See Commonwealth v. Slotcavage**, 939 A.2d 901, 904 (Pa. Super. 2007).

In the instant matter, it does not appear that Brawley has raised a substantial question. Brawley argues that the trial court failed to consider certain mitigating factors when imposing concurrent, standard range sentences of eight to sixteen months' incarceration, plus eight months of consecutive probation, on the simple assault and REAP convictions. Specifically, Brawley argues that the trial court did not consider the fact that twenty years had passed since Brawley's prior conviction for simple assault or the fact that he was employed. Brawley claims that, had the trial court had taken such factors into account, it would have imposed an incarceration sentence lower than the eight months that he received.

Where, as here, an appellant has been sentenced in the standard range of the sentencing guidelines, this Court has held that an allegation that the

sentencing court failed to consider certain mitigating factors does not present a substantial question. **Moury**, 992 A.2d at 171. Further, where the sentencing court had the benefit of a PSI report, we assume that the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Id**. Moreover, where a sentence falls within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. **Id**. Thus, as Brawley has not raised a substantial question, we decline to reach the merits of his challenge to the discretionary aspects of his sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/19/21