J-S35044-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
      :           PENNSYLVANIA
      :
      v.      :
      :
      :
IAN FRANCIS MITCHELL      :
      :
      Appellant      :   No. 333 MDA 2022

Appeal from the PCRA Order Entered January 28, 2022
In the Court of Common Pleas of Tioga County Criminal Division at
No(s):  CP-59-CR-0000163-2017

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:      **FILED: NOVEMBER 15, 2022**

Appellant, Ian Francis Mitchell, appeals from the order entered in the

Court of Common Pleas of Tioga County, which denied his first petition filed

under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546,

following an evidentiary hearing.  After a careful review, we affirm.

The relevant facts and procedural history have been previously

summarized by this Court, in relevant part, as follows:

> The following factual summary is based on the transcripts
> of testimony from Appellant's [jury] trial, [at which Appellant was
> represented by counsel]. On March 8, 2017, the victim
> (hereinafter "I.D.") was ten years old.  I.D. testified that on the
> night of March 8, 2017, her stepfather, Appellant, entered her
> bedroom and was not wearing any clothes.  I.D. testified that
> Appellant got into bed with her and removed her clothing.
> Appellant then touched the outside of I.D.'s vagina with his hand,
> mouth, and penis.  She testified that he tried to put his hand,

---

[*] Former Justice specially assigned to the Superior Court.

mouth, and erect penis inside of her, but she managed to get him away by "kicking and punching, and yelling." N.T., 1/25/2018, at 76. I.D. indicated that Appellant left the room and came back a couple of times and tried the same thing each time. Finally, when Appellant left the room, I.D. left the house. At first, she hid outside, then she returned to the house to get a pair of boots. Then, wearing small pajamas and large boots, I.D. walked a quarter of a mile to a neighbor's house—the home of a girl with whom she went to school. It was 48 degrees and windy that night. One of the neighbors testified that I.D. appeared on her doorstep crying hysterically and that she said, "help, my stepdad is trying to rape me." N.T., 1/24/2018, at 174. [The neighbor's husband testified that I.D. said, "Can you please help me, my stepfather tried to rape me again?" *Id.* at 185.] The neighbors called the police and an investigation followed.

During the investigation, I.D. took part in a forensic interview in which she described what happened to her. In the interview, I.D. used childish words such as "pee pee" when referring to her stepfather's penis. At trial, the defense introduced I.D.'s diary into evidence. The diary contains entries that include vulgar words and descriptions of sexual scenarios. At trial, I.D. testified that she did not write all of the entries in the diary. She testified, "me and my friends write in it." N.T., 1/25/2018, at 122. I.D. also testified that March 8, 2017, was not the first time that Appellant assaulted her. She indicated that Appellant assaulted her regularly, at least five or more times.

*Commonwealth v. Mitchell*, No. 1360 MDA 2018, 2019 WL 2598178, at *1

(Pa.Super. filed 6/25/19) (unpublished memorandum).

At the conclusion of the trial, the jury convicted Appellant of four counts each of criminal attempt rape of a child, indecent assault of a person less than 13 years of age, and simple assault. The trial court found Appellant guilty of one count of harassment. The trial court sentenced Appellant to 84 months to 180 months in prison on each criminal attempt rape conviction, with the sentences to run consecutively, for an aggregate sentence of 336 months to

720 months in prison. The trial court also sentenced Appellant to 12 months to 84 months in prison on the first three convictions of indecent assault of a person less than 13 years of age and ran each of those sentences concurrently with the fourth count of criminal attempt rape. On the fourth indecent assault conviction, the trial court sentenced Appellant to a probationary term of five years and ran that sentence consecutively with the fourth criminal attempt rape conviction and the first three indecent assault convictions. In addition, the trial court sentenced Appellant to 9 months to 24 months in prison on each of the simple assault convictions and ran them each concurrently with the fourth criminal attempt rape conviction and the first three indecent assault convictions. Finally, the trial court also ordered Appellant be subjected to the registration requirements pursuant to the Sexual Offender Registration Notification Act as a Tier Three Offender for each of the criminal attempt rape and indecent assault convictions.

Appellant filed a post-sentence motion, and the trial court denied the motion. Appellant filed a timely, counseled direct appeal to this Court. Therein, Appellant presented challenges to the sufficiency and weight of the evidence supporting his convictions; he contended the trial court erred in not granting a new trial based on after-discovered evidence from a handwriting expert and I.D.'s mother showing that the victim wrote the diary entries; he alleged the prosecutor committed misconduct by asserting I.D. did not write the diary entries but her friend wrote the entries; he alleged trial counsel was

ineffective in introducing unrelated prior bad conduct of Appellant; he presented discretionary aspects of sentencing claims; and, he averred the trial court erred in not permitting the defense to have a psychiatric examination of I.D. since there were clearly issues as to competency and truthfulness.

This Court concluded Appellant was not entitled to relief on his claims, and accordingly, we affirmed his judgment of sentence.[1] Appellant filed a petition for allowance of appeal, which our Supreme Court denied on March 3, 2020.

On or about April 12, 2021, Appellant filed a timely *pro se* PCRA petition, and the PCRA court appointed counsel, who filed an amended PCRA petition. On September 14, 2021, the PCRA court held an evidentiary hearing, and by order entered on January 28, 2022, the PCRA court denied Appellant's petition. This timely, counseled appeal followed, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following issues in his "Statement of Questions Involved" (verbatim):

1. Did the court err and abuse its discretion in denying Appellant's PCRA [petition] when trial counsel was ineffective for failing to adequately challenge a juror for cause after trial counsel was informed that the juror openly displayed bias?

2. Did the court err and abuse its discretion in denying Appellant's PCRA [petition] when his previous attorneys were ineffective in failing to argue the complaining witness's testimony was

---

[1] We did not address the merits of Appellant's ineffective assistance of counsel clam on direct appeal; but rather, we deferred the issue for Appellant to raise the claim in a timely PCRA petition.

insufficient evidence to sustain Appellant's multiple convictions?

3. Did the court err and abuse its discretion in denying Appellant's PCRA [petition] when his trial counsel was ineffective for failing to object and request a curative instruction after the Commonwealth elicited prior bad acts evidence?

4. Did the court err and abuse its discretion in denying Appellant's PCRA [petition] when appellate counsel was ineffective for failing to litigate the denial of Appellant's pretrial motion regarding an "agreement to preserve the right to challenge the *prima facie* case at a time later in the criminal prosecution" filed on August 29th, 2017, and denied on January 23rd, 2018?

5. Did the court err and abuse its discretion in denying Appellant's PCRA [petition] when trial counsel was ineffective for failing to object to one or all of the improper remarks made by the prosecutor during closing argument?

6. Did the court err and abuse its discretion in denying Appellant's PCRA [petition] when trial counsel was ineffective for failing to impeach and cross examine the complaining witness regarding whether Appellant was inside during the aftermath of the attack?

Appellant's Brief at 8-9 (unnecessary capitalization and suggested answers omitted).

Initially, we note our standard of review for an order denying PCRA relief is limited to whether the record supports the PCRA court's determination, and whether that decision is free of legal error. *Commonwealth v. Sattazahn*, 597 Pa. 648, 952 A.2d 640, 652 (2008). "We must accord great deference to the findings of the PCRA court, and such findings will not be disturbed unless they have no support in the record." *Commonwealth v. Scassera*, 965 A.2d 247, 249 (Pa.Super. 2009) (citation omitted).

As relevant here, a PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). In reviewing Appellant's ineffective assistance of counsel claims, we are mindful that, since there is a presumption counsel provided effective representation, the defendant bears the burden of proving ineffectiveness. *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282 (2010).

To prevail on an ineffective assistance claim, a defendant must establish "(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his [client's] interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." *Id.*, *supra*, 10 A.3d at 291 (citations omitted).

> We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. [C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.

*Commonwealth v. Johnson*, 635 Pa. 665, 139 A.3d 1257, 1272 (2016) (citations omitted). *See Commonwealth v. Daniels*, 600 Pa. 1, 963 A.2d 409, 419 (2009) ("A failure to satisfy any prong of the ineffectiveness test

requires rejection of the claim of ineffectiveness.") (citation omitted)).  "A claim has arguable merit where the factual averments, if accurate, could establish cause for relief."  *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa.Super. 2013) (*en banc*) (citation omitted).

Regarding the reasonable basis prong of the ineffective assistance of counsel test, our Supreme Court has relevantly stated the following:

> When assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest….[T]his cannot be a hindsight evaluation of counsel's performance, but requires an examination of "whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect [the] defendant's interests."  Our evaluation of counsel's performance is "highly deferential."

*Commonwealth v. Williams*, 636 Pa. 105, 141 A.3d 440, 463 (2016) (citations and quotations omitted).

Further,

> To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

*Commonwealth v. Spotz*, 624 Pa. 4, 84 A.3d 294, 311-12 (2014) (citations, quotation marks, and quotations omitted). *See Commonwealth v. Gribble*, 580 Pa. 647, 863 A.2d 455, 472 (2004) ("[A] defendant [raising a claim of ineffective assistance of counsel] is required to show actual prejudice; that is,

that counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings.") (quotation omitted)).

In his first issue, Appellant claims trial counsel was ineffective in failing to challenge a potential juror for cause after trial counsel was informed that the juror openly displayed bias. Specifically, Appellant claims that Katherine Marie Morvay, who was a member of Appellant's church, sat in the courtroom while "at least eighty" potential jurors were seated awaiting *voir dire*. Appellant's Brief at 15. He asserts:

> [A potential] juror specifically expressed to Ms. Morvay his animosity towards those who would hurt a child and that he would want to send whoever [commits such a crime] to prison for life because his niece had been assaulted. This [juror] was seated on the jury for Appellant's trial. Ms. Morvay gave this information to Appellant's trial counsel, William Korey, [Esquire]….During his direct examination at the [PCRA] evidentiary hearing, Attorney [Korey] admitted that he was confronted with Ms. Morvay's concerns regarding the juror[']s comments[,] and he did nothing about it.
>
> The very purpose of *voir dire* is for counsel to question potential jurors to uncover bias and prejudice harbored by members of the jury pool. Trial counsel, in this case[,] failed to *voir dire* the[] biased juror or bring [his] bias to the attention of the Court.

*Id.* at 15-16 (citations omitted). Appellant contends his right to an impartial jury was violated by trial counsel's failure to challenge the juror for cause and/or bring the juror's statements to the attention of the trial court during *voir dire*.

It is well-settled that "[a] defendant has a right to an impartial jury pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 9 of the Pennsylvania Constitution. Appellant carries the burden of showing that his jury was not impartial." **Commonwealth v. Chmiel**, 585 Pa. 547, 889 A.2d 501, 519 (2005) (citations omitted).

Further, as our Supreme Court has held:

The purpose of *voir dire* is to ensure the empaneling of a fair and impartial jury capable of following the instructions of the trial court. **See Commonwealth v. Smith**, 518 Pa. 15, 540 A.2d 246, 256 (1988) ("The purpose of the *voir dire* examination is not to provide a better basis upon which a defendant can exercise his peremptory challenges, but to determine whether any venireman has formed a fixed opinion as to the accused's guilt or innocence."). Even exposure to outside information does not ineluctably mean that a jury is unfair and partial.

**Commonwealth v. Tedford**, 598 Pa. 639, 960 A.2d 1, 20 (2008) (quotation and quotation marks omitted).

The test for determining whether a prospective juror should be disqualified is whether he or she is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence. This decision rests within the sound discretion of the trial court, must be based upon the juror's answers and demeanor, and will not be reversed in the absence of a palpable abuse of this discretion.

Jurors should be disqualified for cause when they do not have the ability or willingness to eliminate the influences under which they are operating and therefore cannot render a verdict according to the evidence.

**Commonwealth v. Robinson**, 581 Pa. 154, 864 A.2d 460, 489-90 (2004) (citations, quotation marks, and quotations omitted).

During the PCRA hearing, Ms. Morvay testified she was friends with Appellant's mother. N.T., 9/14/21, at 4. She testified she attended the same church as Appellant's family, as well as Appellant's trial counsel, Mr. Korey. *Id.* During church, Appellant's trial counsel "ask[ed] people to come and pray for justice and fairness during [Appellant's] upcoming case." *Id.* Ms. Morvay testified she discussed Appellant's case with trial counsel during church, as well as "the details of what [was] involved" for her to attend the jury trial. *Id.* at 5. Ms. Morvay confirmed she attended Appellant's trial and was seated in the courtroom with potential jurors prior to jury selection. *Id.*

Ms. Morvay testified that, while she was sitting in the courtroom with the prospective jurors, one of them engaged her in conversation. *Id.* at 9. Specifically, a prospective juror "expressed his animosity toward anybody who might hurt a child." *Id.* at 10. She testified he said: "[I]f this is the case, I would want to send whoever it is to prison for life. And he explained that in his family, there had been a young lady—I think it might have been a niece of his—that had been assaulted, and nothing came of it." *Id.* Ms. Morvay indicated this person was subsequently chosen as a juror for Appellant's trial. *Id.* She testified she told Appellant's trial counsel about the conversation. *Id.* at 11. On cross-examination, Ms. Morvay admitted she was "hard of hearing." *Id.* at 12.

Appellant's trial counsel, Attorney Korey, explained he was Appellant's counsel during pre-trial motions, as well as during the jury trial. After the jury

trial, Attorney Korey and Samuel C. Stretton, Esquire, represented Appellant during post-trial motions. Thereafter, Attorney Korey filed a notice of appeal to protect Appellant's rights; however, Attorney Stretton represented Appellant on direct appeal.

Attorney Korey confirmed he knew Ms. Morvay prior to Appellant's trial. *Id.* at 33. Specifically, he testified he was a minister at the church, which Ms. Morvay attended. *Id.* He confirmed he asked the congregation to pray for Appellant. *Id.* Further, he admitted that, after he was no longer representing Appellant, he began a romantic relationship with Appellant's mother, who also attended the same church where he was a minister, and he later married her. *Id.* at 23, 33-34.

Attorney Korey confirmed Ms. Morvay was in the courtroom during jury selection for Appellant's trial. *Id.* at 34. He indicated Ms. Morvay approached him before jury selection and told him about her concerns regarding the juror. *Id.* at 35. He testified he did nothing in response to her concerns. *Id.*

In addressing Appellant's claim of ineffectiveness, and explaining the reasons it denied the claim, the PCRA court relevantly indicated the following:

> [Appellant] argues that trial counsel failed to ask for additional *voir dire* in light of alleged comments made by a prospective juror to a spectator, Ms. Katherine Morvay, who was present in the courtroom during *voir dire* of the venire that reflected [a] prospective juror's bias. The alleged juror…was ultimately selected onto the jury panel. Thereafter, [Appellant] argues he was "prejudiced by [Attorney] Korey's omission which allowed a biased juror to deliberate and taint the rest of the jury pool and participate in his conviction." [Appellant] relies upon the Affidavit of Ms. Morvay and her testimony presented at the [PCRA]

evidentiary hearing, as well as Attorney Korey's testimony presented at the [PCRA] evidentiary hearing.

The Commonwealth responds that the jury was not tainted. The Commonwealth relies upon the oath administered to the prospective jurors by the Prothonotary and Clerk of Courts, and the subsequent answers given by the prospective jurors in response to questions posed by both the Commonwealth and [Appellant's] trial counsel in order to determine whether any prospective jurors were biased. Additionally, the Commonwealth relies upon the jury panel's individual responses upon being polled.

The Court determines [Appellant] has not established by a preponderance of the evidence that [Appellant's] trial counsel was ineffective for failing to *voir dire* and challenge a prospective juror for cause. The Court finds the testimony of both Ms. Morvay and Attorney Korey—the **only** evidence presented by [Appellant] regarding this claim—to be *incredible*.

Specifically, although [Appellant's] Amended PCRA Petition filed by [counsel] and incorporated by references states "Ms. Morvay has identified the juror as being Jeffery Osgood," this identification is *not* included within her Affidavit nor did she identify the juror as Mr. Osgood at the [PCRA] evidentiary hearing. Instead, Ms. Morvay's Affidavit and her testimony reflect only, in the general sense, that a male prospective juror allegedly stated to her words to the effect that because someone in his family had been assaulted and nothing became of it, if he were required to serve on the jury, he would send the defendant to jail for life.

Therefore, having failed to sufficiently identify the juror as Mr. Osgood, or any other individual who was ultimately seated on the jury, there is no evidence presented that the alleged biased juror, in fact, served on the jury such that he would have been able to somehow taint the rest of the jury.

Critically, even if Ms. Morvay sufficiently identified the alleged biased juror as Mr. Osgood, or any other individual who was ultimately seated on the jury, Ms. Morvay *failed* to relay to Attorney Korey her knowledge of the alleged conversation. Although Ms. Morvay testified at the [PCRA] evidentiary hearing that she told Attorney Korey of the alleged conversation, that testimony was inconsistent with her Affidavit—executed nearly a year and a half prior to her testimony and closer in time to the event—that contained no mention of her relaying the information to Attorney Korey. Based upon that glaring inconsistency, let

along Ms. Morvay's personal relationship with Attorney Korey, [Appellant's mother], and her own motivation to testify, the Court finds Ms. Morvay's testimony to be *incredible*. Likewise, based upon the personal relationship and clear bias between Attorney Korey, [Appellant's mother], and Ms. Morvay, the Court finds Attorney Korey's testimony at the PCRA hearing, [*i.e.,*] that Ms. Morvay told him of the conversation, to be *incredible*.

Therefore, there being no sufficient evidence presented that Attorney Korey was aware of the alleged conversation, then he *cannot* be ineffective for failing to conduct any further *voir dire*. This is true even if Ms. Morvay sufficiently identified the allegedly biased juror as Mr. Osgood or any other individual ultimately seated on the jury.

Consequently, [Appellant] has *not* shown, by a preponderance of the evidence, a claim of arguable merit for two reasons: First, there is no credible evidence that Mr. Osgood, or any other individual ultimately seated on the jury, was, in fact, the alleged biased juror; and second, there is no credible evidence that Attorney Korey was made aware of the alleged conversation, a necessary condition for him to *voir dire* and ultimately challenge for cause Mr. Osgood or any other individual ultimately seated on the jury regarding the alleged conversation.

PCRA Court Opinion, filed 1/28/22, at 35-38 (footnotes omitted) (emphasis in original).

We find no abuse of discretion or error of law. **Sattazahn**, **supra**. Here, following an evidentiary hearing, the PCRA court made detailed findings based on its credibility determinations. We conclude the PCRA court's credibility determinations are supported by the record, and thus, we are bound by such determinations. **See Commonwealth v. Johnson**, 600 Pa. 329, 966 A.2d 523, 532 (2009) ("The findings of a post-conviction court, which hears evidence and passes on the credibility of witnesses, should be given great deference."); **Commonwealth v. White**, 557 Pa. 408, 734 A.2d 374, 381

(1999) (holding an appellate court is bound by credibility determinations of PCRA court where determinations are supported by the record). Thus, we agree with the PCRA court that Appellant failed to demonstrate his claim has arguable merit. *See Johnson*, *supra* (holding PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to plenary review). Accordingly, Appellant is not entitled to relief on his first claim.

Appellant next contends his appellate attorney, Attorney Stretton, was ineffective in failing to argue that I.D.'s testimony was insufficient evidence to sustain Appellant's multiple convictions. Appellant admits his appellate counsel challenged the sufficiency of the evidence on direct appeal; however, Appellant claims appellate counsel improperly "focused [his] arguments on the credibility and capacity of the complaining witness and not on her statements, which, even if taken as true, did not sustain four convictions for each charge." Appellant's Brief at 18.

We have examined the appellate brief, which Attorney Stretton filed in this Court on direct appeal. Therein, appellate counsel presented numerous sufficiency claims, including the sufficiency claim Appellant now asserts. That is, in the brief on direct appeal, appellate counsel relevantly averred the evidence was insufficient to prove four counts of the charges alleged based on I.D.'s testimony. In this vein, appellate counsel argued:

> I.D. also testified [Appellant] sexually assaulted her other times. During the trial, she said it happened five or six times

before, and then she said it happened regularly. But, there were no descriptions or details or dates given by I.D. for any other times. That was the essence of the case. There were no eyewitnesses. There was no corroborating physical evidence. There was not even a doctor's examination. Even the Commonwealth witness, I.D.'s mother, confirmed that she and [Appellant] were together after I.D. was sent to bed at 8:00 p.m., they watched a movie or television together, and then had sexual relations, and both went to sleep. Both were sleeping together when the police arrived, somewhere around 1:00 a.m. or 2:00 a.m. The testimony was extremely contradictory. There was no real police investigation or work to confirm some of these allegations.

\*\*\*

None of the above elements of the crimes have been met. As for I.D.'s testimony stating there were many other times of sexual assault, there is nothing other than I.D. stating something happened, and her testimony was conflicting and contradictory. Other than the child saying [Appellant] put his mouth on her vagina during her trial testimony and she had to fight him off, there was no other evidence.

Appellant's Direct Appeal Brief, filed 1/30/19, at 51-52, 55.

Moreover, on direct appeal, in finding no merit to Appellant's challenge to the sufficiency of the evidence, this Court relied on the trial court's opinion, wherein the trial court specifically addressed whether the evidence was sufficient to prove the four counts of each charge that Appellant was convicted of based on I.D.'s testimony. Specifically, the trial court explained:

At trial, the only evidence the Commonwealth presented regarding the alleged assaults was the victim, I.D.'s testimony. I.D. testified that on the night of March 8, 2017, she was lying in her bedroom in the home she shared with her mother, stepfather (Appellant), and brothers…when [Appellant] entered the bedroom naked. She testified [Appellant] climbed into bed with her and took off some of her clothes. After taking off some of her clothes, I.D. testified Appellant touched her vagina with his hand, tongue, and penis and attempted to insert all those body parts into her

- 15 -

vagina but was unsuccessful. I.D. testified she was able to get [Appellant] off of her by kicking him, punching him, and screaming. According to I.D., [Appellant] left and reentered the bedroom multiple times that night, and when he reentered, he would perform the same actions.

Later in her direct examination, I.D. testified [Appellant] touched her vagina five (5) or more times prior to the night of March 8, 2017, while the family lived at the Millerton house. She stated that during those five (5) or more previous incidents [Appellant] touched her vagina with his mouth and penis.

I.D. also testified to her age and date of birth, and, therefore, the age requirements for the Criminal Attempt Rape and Indecent Assault, as charged, were met.

I.D.'s testimony that on March 8, 2017, [Appellant] entered her room, disrobed her, touched her vagina with his hand, mouth, and penis, and attempted to insert each body part into her vagina was sufficient for the Jury to find him guilty of one count each of Criminal Attempt Rape, Indecent Assault, and Simple Assault.

\*\*\*

[Appellant's] actions on March 8ᵗʰ were also sufficient for the jury to find him guilty of an additional count each of Criminal Attempt Rape, Indecent Assault, and Simple Assault. I.D. testified that after [Appellant] assaulted her the first time that night he exited and reentered the room on multiple occasions. Upon his reentry, [Appellant] assaulted I.D. in the same manner he did during the initial assault. While I.D. did not testify as to how many times [Appellant] exited and reentered the room that night, the jury, based on I.D.'s testimony, could have reasonably inferred that at least one additional assault took place subsequent to the initial one. Thus, the evidence was sufficient to sustain a second conviction on each charge based on [Appellant's] actions on the night of March 8, 2017.

In addition to the assault on March 8ᵗʰ, I.D. testified [Appellant] assaulted her on five (5) or more previous occasions by touching her vagina with his mouth and penis. The jury could have reasonably found that by touching I.D.'s vagina with his penis, [Appellant] took a substantial step towards having sexual intercourse with her. They also could reasonably infer that by touching I.D.'s vagina with his penis, [Appellant] manifested the intent to have sexual intercourse with I.D. These are the two requirements to sustain a conviction for Criminal Attempt Rape

- 16 -

and the jury's finding of both of them is supported by I.D.'s testimony….I.D.'s testimony of these previous assaults also provides sufficient evidence to support convictions of Indecent Assault and Simple Assault. The evidence is thus sufficient to support the jury's convictions of [Appellant] for two or more sets of counts of Criminal Attempt Rape, Indecent Assault, and Simple Assault.

Trial Court Opinion, filed 8/18/18, at 6-7.

Based on the aforementioned, the PCRA court found no arguable merit to Appellant's ineffective assistance of appellate counsel claim. That is, the PCRA court concluded that, contrary to Appellant's claim in his PCRA petition, appellate counsel raised on direct appeal the specific sufficiency theory at issue. PCRA Court Opinion, filed 1/23/22, at 9-10.

Moreover, as the PCRA court noted, this Court concluded on direct appeal that I.D.'s testimony was sufficient to sustain Appellant's convictions on four counts each of criminal attempt rape of a child, indecent assault of a person less than 13 years of age, and simple assault. *See id.* Thus, as the PCRA court notes, Appellant has not met the prejudice prong, and he is not entitled to relief on his ineffective assistance of counsel claim. *Id.*

In his next issue, Appellant claims trial counsel was ineffective in failing to object and request a curative instruction after the Commonwealth elicited prior bad acts evidence from I.D.'s mother, who was Appellant's wife. Specifically, he contends I.D.'s mother offered prejudicial "bad acts" evidence when she testified Appellant used marijuana and that their relationship became "abusive and volatile." We find no relief is due.

- 17 -

We review rulings on the admission of evidence for an abuse of discretion. *See Commonwealth v. Elliott*, 622 Pa. 236, 80 A.3d 415, 446 (2013). To be admissible, evidence must be relevant. Pa.R.E. 402. This means that "it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or presumption regarding a material fact." *Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa.Super. 2019) (citation omitted).

Nonetheless, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). This type of evidence is commonly known as "bad acts" evidence. *See Commonwealth v. Hicks*, 638 Pa. 444, 156 A.3d 1114, 1125 (2017). Bad acts evidence may be admissible if it is offered for another, proper purpose, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). Where bad acts evidence is offered for a proper purpose in a criminal case, the probative value of the evidence must outweigh its potential for unfair prejudice. *Id.*

Bad acts evidence may also be admissible under the *res gestae* exception. This exception permits the admission of evidence of other crimes or bad acts to tell "the complete story." *See Commonwealth v. Hairston*, 624 Pa. 143, 84 A.3d 657, 665 (2014). It applies where the other

crimes or bad acts "were part of a chain or sequence of events which formed the history of the case and were part of its natural development." ***Commonwealth v. Brown***, 52 A.3d 320, 326 (Pa.Super. 2012) (citation omitted).

Here, the Commonwealth asked I.D.'s mother about her and Appellant's use of substances during March of 2017, and the time prior thereto (*i.e*, the time period in which I.D. was assaulted). Specifically, the following relevant exchange occurred between I.D.'s mother and the prosecutor on direct examination:

> Q: Okay; can you tell me what you were using?
> A: We were smoking marijuana and drinking alcohol.
> Q: Okay; both of you smoked marijuana and both of you drank alcohol?
> A: Yes.
> Q: Okay; did you have a particular alcohol of choice?
> A: No.
> Q: Okay. How about [Appellant], do you feel like he had a particular substance of choice between the drinking and the smoking?
> A: Definitely, the marijuana over the alcohol, sure.

N.T., 1/26/18, at 7.

The PCRA court determined the evidence of Appellant's marijuana use was not offered to prove his character on a particular occasion to show he acted in accordance with the character. Rather, the PCRA court held the Commonwealth had a legitimate reason for asking I.D.'s mother about

Appellant's marijuana use during the time of I.D.'s assaults. Specifically, the PCRA court indicated:

> Regarding [Appellant's] marijuana use,…in context, the evidence was elicited to explain the events of the night in question, and in particular, to test [Appellant's] ability to perceive the events on the night in question. Additionally, the evidence was elicited to illuminate on [I.D.'s mother's] motive for testifying, which is intertwined with the abusive and volatile [relationship that developed between Appellant and I.D.'s mother.]

PCRA Court Opinion, filed 1/28/22, at 11.

Additionally, the PCRA court held that, since the Commonwealth did not "dwell" on Appellant's use of marijuana, the probative value of the evidence outweighed its potential for unfair prejudice. *See id.*

We agree with the PCRA court's analysis in this regard, and thus, we conclude Appellant has failed to demonstrate there is arguable merit to his underlying ineffective assistance of counsel claim. *See Stewart*, *supra*.

Further, the Commonwealth asked I.D.'s mother whether she was in a relationship with Appellant at the time of his trial, and she responded she was no longer in a relationship with him. N.T., 1/26/18, at 16. She explained she remained in the relationship after she heard about I.D.'s accusations since Appellant was her "husband of nine years;" however, she left him before his trial. *Id.* at 15. When the Commonwealth asked her "what triggered" the ending of the relationship, I.D.'s mother testified their "relationship slowly, but surely, over the years, got more and more abusive and volatile." *Id.*

- 20 -

The PCRA court determined the evidence of the parties' relationship becoming "more abusive and volatile" was not offered to prove Appellant's character on a particular occasion to show he acted in accordance with the character. Rather, the PCRA court held the Commonwealth had a legitimate reason for asking I.D.'s mother about her relationship with Appellant as of the time of trial. Specifically, the PCRA court indicated:

> Regarding [Appellant's] "abusive and volatile" conduct toward [I.D.'s mother], the [PCRA] court agrees with the Commonwealth that the testimony was introduced for a legitimate reason[.] Upon reviewing [I.D.'s mother's] testimony in context rather than in isolation, the prosecutor's specific purpose in eliciting the testimony was to show her motive for testifying; specifically, that there were no outside sources pressuring her to leave [Appellant] and to testify against him after initially deciding to stay with him after the allegations were made [by I.D.].

PCRA Court Opinion, filed 1/28/22, at 11 (footnote omitted).

Additionally, the PCRA court held that, since the Commonwealth did not "dwell" on the "abusive and volatile" relationship, the probative value of the evidence outweighed its potential for unfair prejudice. *See id.*

We agree with the PCRA court's analysis in this regard, and thus, we conclude Appellant has failed to demonstrate there is arguable merit to his underlying ineffective assistance of counsel claim. *See Stewart*, *supra*.

Moreover, we note that, given I.D.'s extensive and detailed testimony about Appellant's sexual abuse of her, we conclude that Appellant has failed to demonstrate that, "but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different."

*Ali*, *supra*, 10 A.3d at 291 (citations omitted). Thus, Appellant has also failed to prove he was prejudiced by trial counsel's failure to object to I.D.'s mother's testimony at issue. *Id.*

In his next issue, Appellant contends appellate counsel was ineffective in failing to litigate on direct appeal the issue of whether Appellant was deprived of this "bargain," which he made with the Commonwealth prior to trial. Specifically, Appellant avers he waived his right to a preliminary hearing while preserving his right to have a pre-trial hearing to challenge the Commonwealth's ability to establish a *prima facie* case. He contends he was deprived of this bargain, and thus, appellate counsel was ineffective in failing to raise this issue on direct appeal.

In finding there is no arguable merit to Appellant's claim, the PCRA court indicated the following:

> [Appellant] relies upon an agreement entered between the Commonwealth and Appellant's prior trial counsel, Attorney Jeffrey S. Loomis, to preserve [Appellant's] right to challenge the Commonwealth's *prima facie* case. [Appellant] alleges that because these negotiations were ignored, he did not receive the "benefit of the bargain," and appellate counsel was, therefore, ineffective in failing to litigate the issue.
>
> ***
>
> [T]he record belies the underlying claim, [and, therefore,] it has no arguable merit. PCRA counsel's argument that [Appellant] failed to receive the "benefit of the bargain" is factually incorrect. The bargain was only for [Appellant] to have the right to challenge the Commonwealth's *prima facie* case. [Appellant] was afforded this right when, based upon [Appellant's] motion to challenge the Commonwealth's *prima facie* case, which [Appellant] filed on August 29, 2017, the [trial court] held a habeas hearing on the matter on September 28, 2017. Moreover,

- 22 -

in his testimony at the PCRA [evidentiary] hearing, [trial counsel] admitted such when he stated, "We ha[d] a habeas proceeding, which really was a redo on the prelim." Although the [trial court] denied [Appellant's] motion to challenge the Commonwealth's *prima facie* case [on the basis the Commonwealth had established a *prima facie* case on the charges], this does not somehow mean that [Appellant's] negotiations were ignored and that he did not receive the "benefit of the bargain." This is true since the [trial court's] order was a merits-based decision. Thus, because [Appellant] received the benefit of his bargain, any further litigation regarding the denial would have been fruitless.

PCRA Court Opinion, filed 1/28/22, at 13-14 (emphasis omitted).

We conclude the record supports the PCRA court's factual findings, and we agree with the PCRA court's sound reasoning. ***See Scassera***, ***supra***. Thus, Appellant is not entitled to relief on his claim of ineffective assistance of counsel.

In his next issue, Appellant contends trial counsel was ineffective in failing to object to various remarks made by the prosecutor during closing arguments.

Our Supreme Court has held:

[A] claim of ineffective assistance grounded in trial counsel's failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. The touchstone is fairness of the trial, not the culpability of the prosecutor. Finally, not every intemperate or improper remark mandates the granting of a new trial; reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and

hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

* * *

[Our Supreme Court] has recognized that counsel [is] not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel. Under some circumstances, trial counsel may forgo objecting to an objectionable remark or seeking a cautionary instruction on a particular point because objections sometimes highlight the issue for the jury, and curative instructions always do.

*Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 144-46 (2012) (citations, quotations, and original brackets omitted). Furthermore, "[a] prosecutor does not engage in misconduct when his statements are based on the evidence or made with oratorical flair." *Commonwealth v. Carson*, 590 Pa. 501, 913 A.2d 220, 237 (citation omitted). "Additionally, a prosecutor must be permitted to respond to arguments made by the defense." *Id.* (citation omitted). Finally, it is well settled that "[i]n reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Commonwealth v. Sampson*, 900 A.2d 887, 890 (Pa.Super. 2006) (citation omitted).

Here, Appellant challenges the following excerpts from the prosecutor's closing argument:

[I.D.] had every motivation to tell the truth. Contrary to that, the Defendant could have a motivation to lie. If he did the things that she said he did, why wouldn't he lie about it? There

- 24 -

would be no reason to tell the truth, he could have every reason to lie. And I submit to you, that's what happened here.

N.T., 1/26/18, at 149-50.

And when [trial counsel] asked [Appellant] if he did this, he was originally quite adamant that he didn't; then [trial counsel] asked a follow-up question about the specific night and whether he did it then, and he was quite adamant that he didn't. And then [trial counsel] asked him about the times in the past. How about all the times in the past, and his answers changed: he had no recollection ever. He used that phrase: no recollection ever. Let me tell you, if you asked me if I did the things he was charged with, I wouldn't be telling you I didn't recall, because it wouldn't have happened, and I would know that. I would not have to use the phrase, no recollection ever, because I'd know darn well I didn't do it. And I think that was a very telling statement.

*Id.* at 167-68.

Appellant contends these portions of the prosecutor's closing argument were highly inflammatory, and, thus, trial counsel was ineffective in failing to object. We find no arguable merit to this claim. **See Stewart**, **supra**.

Our review of the record reveals the prosecutor's comments were a fair response to statements made by Appellant's trial counsel during his closing argument. **See Carson**, **supra**. Specifically, Appellant's trial counsel argued:

And [the police] come back and they talk to the Mitchells. And you've heard their testimony. Can you imagine—now, I want you to bear with me here for a moment. Imagine someone accuses you of this offense, would you have a powerful reaction to that? I tell yah, I would. [Appellant] did, okay? He was very distraught over this, okay? Emotionally upset. Didn't have his lawyer there. Didn't have a lawyer there. His integrity was challenged. He was in shock. He knows it didn't happen!

\*\*\*

Now, the police ask him if he did it. Nah, he's denying it. They ask [I.D.'s mother]—she's there—she's shocked—like he

- 25 -

didn't do it. We're all here. We've been here. There's—like nothing happened.

***

The kids are right across the hallway. NOTHIN'! FOUR TIMES—FOUR TIMES THAT SIZE! This incredibly powerful little girl throws him out. You're supposed to believe that, right? She gets a guy off her that size. And, by the way, he doesn't have a scratch on him. Nothin'. No evidence.

***

I had to hold back on my cross-examination. But I've learned a lot about [I.D.]. She's an amazing actress, and she's got her way, and we'll come back to that in a second; she wanted out and boy she got out. She concocted a plan and she's doing a good job.

***

Do you think [I.D.] was truthful? She told you yah she LIES! Not single lies; lies. And then when I followed up with her—each time I would catch her in something, her story would change; multiple times.

***

If you're sexually assaulted, you're going to speak up, you're going to say something at home, school, friends, relatives. Are you likely to? Not absolutely guaranteed, you're likely to. There are many instances here for [I.D.]. She had a phone in her room….She's a bit of an actress and got some strengths. So, if you're sexually assaulted, isn't there likely to be evidence of it?

***

Her testimony was he tried to rape me. And it's her incredible ingenuity and strength that stopped all this; if you believe it. Look at the demeanor of her father, okay? He's broken. He loves the kids. He took them in. He's not the kind of guy—he cooks—he's there; does that give you the impression of a guy that's abusive?

N.T., 1/26/18, at 121-22, 126-27, 133, 141-42, 143 (emphasis in original).

Here, the record reflects the prosecutor's statements regarding I.D.'s

motives to tell the truth, Appellant's motives to lie, and Appellant's lack of

recollection about prior assaults, were based on the record, as well as constituted fair responses to defense counsel's statements regarding I.D.'s motives to lie and Appellant's motives to tell the truth. *See Carson*, *supra*. Thus, we find no basis for Appellant's trial counsel to have objected to the prosecutors' closing argument, and thus, there is no arguable merit to Appellant's underlying ineffectiveness claim. *See Stewart*, *supra*.

Moreover, we note that, during the instructions to the jury, the trial court specifically informed the jury that "[t]he speeches of Counsel are not part of evidence, and you should not consider them as such." N.T., 1/26/18, at 197. The trial court indicated to the jury "you are not required to accept the arguments of either lawyer. It is for you, and you alone, to decide this case, based on the evidence, as it was presented from the witness stand, and in accordance with the instructions I am now giving you." *Id.*

It is well settled that the jury is presumed to follow the instructions given to it by the trial court. *Commonwealth v. Jones*, 542 Pa. 464, 668 A.2d 491 (1995). Thus, Appellant has failed to demonstrate that he was prejudiced by trial counsel's failure to object to the excerpts of the prosecutor's closing argument set forth *supra*. *Ali*, *supra*, 10 A.3d at 291 (holding to show prejudice, the petitioner must demonstrate "but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different") (citations omitted)).

In his final issue, Appellant contends trial counsel was ineffective in failing to impeach I.D. on cross-examination regarding an out-of-court statement she made to the police, which was inconsistent with her trial testimony. Specifically, Appellant contends:

> At trial, [I.D.] testified that after the alleged incident she stayed outside [the house] because she thought Appellant was inside the house. However, according to the Affidavit of Probable Cause, [I.D.] told the police that that [*sic*] she knew Appellant had been outside the house looking for her and she went back into the residence to retrieve a pair of boots. These two statements directly contradict each other.

Appellant's Brief at 27 (citation omitted).

At trial, the relevant exchange occurred during the Commonwealth's direct examination of I.D.:

> Q: So, you said you ran outside [after the assault], did [Appellant] follow you outside?
>
> A: No, not that I know of.
>
> Q: Okay. All right; did you know where you went when you went outside?
>
> A: Where I went?
>
> Q: Yeah.
>
> A: I went to a building behind the house, then after that, I went to a tree; and I think after that, I went back inside to grab boots, and back outside to the tree; and back and forth between the tree and the building next to my house.
>
> Q: Okay; and were you seeing [Appellant] at all while you were out there—
>
> A: No.
>
> Q: Okay. And why were you staying outside?
>
> A: Why was I staying outside?
>
> Q: Yeah.

A: Because I thought he was inside, and I didn't want to go back inside.

Q: Okay, so you talked about a tree and some boots, and a building; tell me about the boots? Where did you get boots from?

A: When you come inside [the house], there's a bench next to the door and they were right there.

\*\*\*

Q: Okay. What did you do after you did this thing that you're saying where you were by a tree and by a building and you got boots; what did you do next?

A: I walked along the road to my friend's house.

N.T., 1/25/18, at 79-80.

Appellant asserts that I.D. made out-of-court statements to the police indicating she went inside to get the boots because she thought Appellant was outside; however, her trial testimony suggests she went inside to get the boots despite knowing Appellant was inside the house. Appellant contends trial counsel was ineffective in failing to impeach I.D. about this inconsistency regarding where she thought Appellant was when she went inside to get the boots.

In finding Appellant was not entitled to relief, the PCRA court concluded Appellant was not prejudiced by any omission on trial counsel's part in this regard. Specifically, the PCRA court explained:

> The Commonwealth argues almost the entirety of trial counsel's cross-examination was centered around attempting to find inconsistencies in the minor victim's testimony. Additionally, trial counsel's failure to attempt to impeach the minor victim based on a small inconsistency in what she did *after* the incident [did not prejudice Appellant].

- 29 -

> The [PCRA] court agrees with the Commonwealth and determines [Appellant] was not prejudiced by the testimony[.]
>
> ***
>
> [Appellant's] trial counsel made considerable efforts attempting to impeach the minor victim in this case regarding the actual events and her motivation for testifying. Therefore, there is no reasonable probability of acquittal but for the allegedly ineffective conduct by trial counsel pertaining to—relative to those attempts—a minor inconsistency regarding what the minor victim did after the incident as articulated in the police report.

PCRA Court Opinion, filed 1/28/22, at 18-19.

We agree with the PCRA court's sound reasoning. Any inconsistency between I.D.'s testimony as to whether she went inside to retrieve boots believing Appellant was inside the residence or believing he was outside the residence was far too minor for this Court to conclude Appellant was prejudiced by trial counsel's failure to vigorously impeach I.D. on this point. *See Commonwealth v. Begley*, 566 Pa. 239, 780 A.2d 605 (2001) (holding the appellant was not entitled to relief on ineffectiveness claim related to counsel's failure to impeach witnesses on minor inconsistencies). That is, Appellant has failed to demonstrate that, but for counsel's omission, there is a reasonable probability that the result of the proceedings would have been different. *See Spotz*, *supra*. Thus, he is not entitled to relief.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/15/2022